# EXHIBIT A

IN THE CHANCERY COURT OF TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS, SHELBY COUNTY

SHELBY COUNTY
CHANCERY COURT
JUL 27 2012
DONNA RUSSELL, C & M
TIME: 13 52 BY: ꞁꞁ

ROYCE BARRON,

Plaintiff,

NO: CH-12-1218-1

BANKER'S LIFE AND
CASUALTY COMPANY,

Defendant.

---

## COMPLAINT FOR BREACH OF CONTRACT,
## REQUEST FOR DAMAGES AND INJUNCTIVE RELIEF

---

**TO THE HONORABLE CHANCELLORS OF THE CHANCERY COURT OF
TENNESSEE FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS, SHELBY
COUNTY:**

Plaintiff, Royce Barron ("Mr. Barron" and "Plaintiff"), for causes of action against

Defendant, Banker's Life and Casualty Company ("Banker's Life" and "Defendant") would

respectfully show unto the Court as follows:

### PRELIMINARY STATEMENT

This is a Complaint for damages for breach of contract, breach of the covenant of good

faith and fair dealing, violation of the Tennessee Consumer Protection Act, bad faith and

injunctive relief arising out of Defendant's refusal and failure to reinstate a life insurance policy,

and for recovery of litigation expenses, attorney's fees, and punitive damages against Defendant

Banker's Life.

## JURISDICTION

1.      Venue is properly situated in Shelby County, Tennessee pursuant to Tenn. Code Ann. § 20-4-101.

2.      The Court has jurisdiction pursuant to Tenn. Code Ann. § 16-10-101.

## PARTIES

3.      Plaintiff Royce Barron is a resident citizen of Shelby County, Tennessee.

4.      Defendant Banker's Life is registered to do business as a foreign corporation in the State of Tennessee and may be served with service of process through its registered agent, Commissioner, Insurance, located at 500 James Robertson Parkway, Tennessee Department of Commerce and Insurance, Nashville, Tennessee 37243.

## FACTUAL BACKGROUND

### I.   THE BANKER'S LIFE INSURANCE POLICY

5.      Royce Barron obtained a life insurance policy from Defendant on August 14, 1991, Policy Number 7271008 (the "Policy"), for a total FIFTY THOUSAND AND 00/100 DOLLARS ($50,000.00), which included a TWENTY-FIVE THOUSAND AND 00/100 DOLLARS ($25,000.00) Flexible Premium Adjusted Life policy and a TWENTY-FIVE THOUSAND AND 00/100 DOLLARS ($25,000.00) Annual Renewable Term.

6.      The Policy has a maturity date of August 14, 2040.

7.      This Policy was memorialized in a contract (the "Contract") between the Defendant and the Plaintiff, dated August 14, 1991, which reads "this policy is a legal contract between the Company and the owner." A genuine, true and correct copy of the Contract is attached hereto as Exhibit A.

8.      The beneficiary of this Policy is Deborah Barron, the wife of Royce Barron.

9.      The Policy is for whole life insurance, with the proceeds to be paid to Mr. Barron, if still living, on the Policy's maturity date, or to the beneficiary of the Policy upon Plaintiff's death. Further, the Policy allows for a surrender of the Policy's cash value (the "Cash Value") at the election of the Policy owner.

10.     The Policy has an annualized payment schedule, with each payment due in August of that respective year.

11.     The Policy contains the following "Termination" provision:

> This policy will terminate when any one of the following events occur:
>
> (1) the owner requests that coverage terminates; (2) the insured dies; (3) the policy matures; (4) the Grace Period ends without payment of the required premiums; or (5) the total indebtedness equals or exceeds the cash value.

12.     The Policy contains the following "Grace Period" provision:

> If the cash surrender value on a monthly anniversary day will not cover the next monthly deduction, a grace period of 61 days from such monthly anniversary day will be allowed to pay a premium that will cover the monthly deduction. The Company will send a written notice 30 days before the end of the grace period to the *owner's last address shown* (emphasis added) in the Company's records

and to any assignee of record if the premium is not previously paid.

13.     The Policy contains the following "Reinstatement" provision:

Subject to meeting the following conditions, the policy may be reinstated during the lifetime of the insured and before the maturity date, unless it was surrendered for cash. The requirements for reinstatement are: (1) evidence of insurability satisfactory to the Company must be submitted; (2) a premium sufficient to pay any past due monthly deductions at the end of the grace period must be paid; (3) a premium sufficient to keep the policy in force for two months at time or reinstatement must be paid; and (4) any indebtedness existing at the end of the grace period must be paid or reinstated.

14.     Plaintiff has timely paid all required premiums since the Policy's inception, and has satisfied all terms and conditions of the Banker's Life Policy.

15.     Plaintiff has never taken any action to surrender the Policy for its cash value or to terminate the Policy.

16.     The total indebtedness of the Policy has never exceeded the Policy's cash value.

## II. BANKER'S LIFE WRONGFUL TERMINATION OF PLAINTIFF'S POLICY

17.     From the date the Policy was issued, Plaintiff has paid Banker's Life in excess of ELEVEN THOUSAND AND 00/100 DOLLARS ($11,000.00) in premiums.

18.     In or around January of 2011, Plaintiff relocated from 9746 Leeward Slopes, Lakeland TN, 38002 (the "Old Mailing Address").

19.     At such time, Plaintiff gave proper notice to Defendant of the change of address and directed that all future mail be delivered to P.O. Box 495, Ellendale, TN 38029 (the "New Mailing Address").

20.     In or around August of 2011, Defendant sent an invoice to Plaintiff at his New Mailing Address (the "Invoice") stating that Plaintiff's insurance payment was due by August 14, 2011, for the 2011-2012 annual premium payment.  A genuine, true and correct copy of the Invoice is attached hereto as Exhibit B.

21.     The delivery of this Invoice to the New Mailing Address in August of 2011, confirms that Defendant had been notified and had knowledge of Plaintiff's relocation and New Mailing Address prior to such date.

22.     On or around August 4, 2011, Plaintiff mailed Defendant a check for FIVE HUNDRED NINETY AND 00/100 DOLLARS ($500.00) for the 2011-2012 annual premium payment.  A genuine, true and correct copy of Plaintiff's check is attached hereto as Exhibit C.

23.     As evidenced by this check, this payment was accepted and cashed by Defendant.

24.     By letter dated February 14, 2012, Defendant notified Plaintiff (the "Pre-Termination Notice"), that the policy was overdue and a payment must be made by March 15, 2012, to avoid cancellation.  A genuine, true and correct copy of such Notice is attached hereto as Exhibit D.

25.     This Pre-Termination Notice was sent only to Plaintiff's *Old Mailing Address*.

26.     As analyzed below, Defendant's failure to send this Pre-Termination Notice to Plaintiff's last known address on file, the New Mailing Address, was a breach of the termination provision and grace period as provided for in the Contract.

27.     No additional pre-termination notices were ever sent to Plaintiff prior to the Policy's termination.

28.     This Pre-Termination Notice was ultimately forwarded to Plaintiff by the U.S. Post Office, but did not arrive at Plaintiff's New Mailing Address until late March 2012.

29.     Upon receipt of such Pre-Termination Notice in late March 2012, Plaintiff's wife, Mrs. Barron, immediately called Defendant to inquire about the Policy's termination and any overdue balances. At such time, Defendant informed Plaintiff that the policy had been terminated, without providing any justification thereof, and that to reinstate the Policy a new application (the "Reinstatement Application") would need to be submitted.

30.     Despite Plaintiff's frustration for not being provided a reason for the Policy's termination, the Plaintiff honored Defendant's request and submitted the Reinstatement Application for reinstatement.

31.     On April 6, 2012, Plaintiff received a letter from Defendant (the "April Letter") which stated that the Reinstatement Application was invalid because Plaintiff failed to provide "additional information" on Section 1(a) and (e), which required a lengthy medical history of all Mr. Barron's physician visits over the past twenty-two years. Further, the April Letter stated that reinstatement would not be assured and would be subject to further approval by the Defendant's Underwriting Department. A genuine, true and correct copy of the April Letter is attached hereto as Exhibit E.

32.     Upon receipt of the April Letter, Mrs. Barron again called Defendant and stated that it would be difficult to obtain such information for Plaintiff's Reinstatement Application. An employee for Defendant told Mrs. Barron to provide as much information as possible for this Section 1, to resubmit the application, and to accompany the application with a letter explaining what events had transpired.   Plaintiff was instructed that a decision on Mr. Barron's reinstatement would be determined within twenty (20) days and the Plaintiff would be contacted accordingly.

33.     To comply with Defendant's request, Plaintiff resubmitted the Reinstatement Application with a letter documenting the events that had transpired.  A genuine, true and correct copy of Plaintiff's resubmitted application and letter are attached hereto as <u>Exhibit F</u>.

34.     On June 4, 2012, after thirty (30) days had passed without any contact from Defendant, Mrs. Barron again took the initiative to contact the Defendant.  During such phone call, she was told that the Mr. Barron's Policy had been denied for failure to provide sufficient information on Section 1.

35.     To date, Defendant has made no effort to provide written notification to Plaintiff or Mrs. Barron that the Policy was in fact cancelled on March 15, 2012, or that the reinstatement was ultimately denied.

36.     Further, Defendant has made no contact with Plaintiff or Mrs. Barron in regards to payment of the Cash Value of the Policy.

37.     On or about June 15, 2012, Plaintiff retained Apperson Crump PLC ("Plaintiff's Counsel"), to resolve this matter.

38.     At Defendant's request, Plaintiff executed a Power of Attorney which was faxed to the number that Defendant had provided. A true and correct copy of this communication is attached hereto as <u>Exhibit G</u>.

39.     On July 2, 2012, a letter was sent by Plaintiff's Counsel via certified mail (the "Certified Letter"), accompanied with a facsimile copy, to the number and address provided by Defendant. This letter notified Defendant of their errors and attempted to resolve the dispute without pursuing litigation. True, genuine and correct copies of these communications are attached hereto as <u>Exhibit H.</u>

40.     As of July 28, 2012, Defendant has yet to contact Plaintiff or Plaintiff's Counsel to resolve this matter.

41.     Defendant's complete lack of communication and effort to resolve this matter has left Plaintiff with no option but to file this lawsuit to enforce his rights and benefits to the Policy.

<u>FIRST CAUSE OF ACTION</u>
<u>BREACH OF CONTRACT</u>

42.     Plaintiff reiterates and relies upon Paragraph 1 through _____ set out herein and incorporates the same by reference.

43.     The Policy is a written contract between Banker's Life and Mr. Barron to provide life insurance coverage for Plaintiff.

44.     The Plaintiff has fully satisfied his obligations under the Policy, including payment of all premiums.

45.     Plaintiff performed all conditions for reinstatement of the Policy, including compliance with the reinstatement provisions set forth in the Policy and submission of the Reinstatement Application.

46. As set forth above, Defendant breached the Contract by, among other things:

(a) unreasonably and groundlessly terminating the Policy;

(b) failing to adhere to the "Grace Period" provision of the Policy;

(c) refusing to reinstate the Policy upon Plaintiff's Application for Reinstatement of Life Insurance; and

(d) failing to provide payment of the Cash Value of the Policy upon any alleged surrender of the Policy by Plaintiff.

47. Despite Plaintiff's best efforts, Defendant would not correct these flagrant breaches, thereby leaving Plaintiff with no alternative but to initiate this litigation.

48. As a direct and proximate result of Defendant's breaches of contract, Plaintiff has suffered and continues to suffer monetary damages, including attorney's fees and costs of litigation to establish his rights in the Policy benefits due therein.

## SECOND CAUSE OF ACTION
## TORTIOUS BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

49. Plaintiff reiterates and relies upon Paragraph 1 through _____ set out herein and incorporates the same by reference.

50. The Banker's Life Policy contains an implied covenant of good faith and fair dealing under which Banker's Life should not take any action that would deprive Plaintiff of the rights and benefits due under such Policy.

51. Plaintiff has fully satisfied his obligations under the Policy.

52. Banker's Life tortiously breached this implied covenant of good faith and fair dealing by engaging in a course of conduct intentionally designed to prevent Plaintiff from rights

due under the Policy.   Specifically Banker's Life breached this implied covenant by, among other things:

    (a)    unreasonably and groundlessly terminating the Policy;

    (b)    refusing to reinstate the Policy upon Plaintiff's Application for Reinstatement of Life Insurance;

    (c)    failing to adhere to the "Grace Period" provision of the Policy; and

    (d)    failing to respond to both Plaintiff and Plaintiff's Counsel in a timely and reasonable manner to resolve this matter.

53.    Defendant's breaches of good faith and fair dealing were undertaken to protect Defendant's own pecuniary interests, without regard to its obligations under the Policy to Plaintiff.

54.    As a direct and proximate result of Defendant's breaches of the implied covenant of good faith and fair dealing, Plaintiff has suffered and continues to suffer monetary damages, including attorney's fees and costs of litigation to establish his rights in the Policy benefits due therein.

55.    Defendant's breaches of the implied covenant of good faith and fair dealing were accompanied by malice, willful and wanton conduct and as such Plaintiff is entitled to punitive damages.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE
### TENNESSEE CONSUMER PROTECTION ACT

56.    Plaintiff reiterates and relies upon Paragraph 1 through _____ set out herein and incorporates the same by reference.

57.    Defendant's unlawful termination of the Policy, and failure to properly communicate with Plaintiff and Plaintiff's Counsel, constitutes a deceptive trade practice pursuant to Tenn. Code Ann. §47-18-104, *et seq.*

58.    Plaintiff has suffered ascertainable loss of property as a result of the deceptive acts and practices of Defendant.

59.    Plaintiff is entitled to recover compensatory damages, attorney's fees and other litigation expenses, which Plaintiff would not have incurred but for the deceptive acts and practices of Defendant.

## FOURTH CAUSE OF ACTION
### BAD FAITH CONDUCT

60.    Plaintiff reiterates and relies upon Paragraph 1 through _____ set out herein and incorporates the same by reference.

61.    Defendant's conduct toward Plaintiff, as described above, has been and continues to be wrongful, tortious and is anchored in bad faith.

62.    Defendant has also acted in bad faith toward Plaintiff by unreasonably or recklessly denying reinstatement of the Policy to which Plaintiff is contractually entitled.

63.    As a result of Defendant's bad faith conduct, Plaintiff has suffered and continues to suffer monetary damages, including attorney's fees, and costs of litigation to establish his rights in the Policy benefits due therein.

64.    Defendant's bad faith conduct was accompanied by malice, willful and wanton conduct, and as such Plaintiff is entitled to punitive damages.

## FIFTH CAUSE OF ACTION
## INJUNCTIVE RELIEF

65.     Plaintiff reiterates and relies upon Paragraph 1 through _____ set out herein and incorporates the same by reference.

66.     Despite Plaintiff's payment of all necessary premiums and application for reinstatement, Banker's Life fails and refuses to reinstate the Policy contrary to the express terms of the Policy.

67.     As a result of Defendant's failure and refusal to reinstate the Policy, Plaintiff has been and will continue to be irreparably injured by the lapse and termination of the Policy.  Any remedy available to Plaintiff through an award of damages for Defendant's refusal to reinstate the Policy would be inadequate.

68.     Plaintiff is entitled to an Order from this Court mandating that Banker's Life immediately reinstate the Policy in full force and effect.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests this Court enter a judgment in its favor and against Defendant, and for the following relief:

69.     That service of process issue upon Defendant and that it be required to answer;

70.     That Defendant be required to file an Answer to said Complaint;

71.     For an Order declaring that Banker's Life is contractually obligated to immediately reinstate the Policy;

72.     For economic damages on the first, second, third and fourth claims for relief;

73.     For punitive damages on the second, third and fourth claims for relief;

74.     For pre-judgment and post-judgment interest on such damages at the maximum rate allowed by the law;

-14-

75.    For the costs, expenses and attorney's fees that Plaintiff has incurred and will continue to incur in bringing and maintaining this action; and

76.    For any other relief, both general and specific, to which the Court finds Plaintiff is entitled.


Respectfully Submitted,


Anne E. Kutsikovich        # 029555
Henry L. Klein             # 8856
**APPERSON CRUMP PLC**
Attorneys for Plaintiff
6070 Poplar Avenue, Suite 600
Memphis, Tennessee 38119
Telephone: (901) 756-6300

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Complaint has been delivered via U.S. certified mail to the registered agent of Defendant Banker's Life Casualty Company, Commissioner Insurance, located at 500 James Robertson Parkway, Tennessee Department of Commerce and Insurance, Nashville, Tennessee 37243.

This _27th_ day of July, 2012.

Anne E. Kutsikovich

EXHIBIT

A

# BANKERS LIFE AND CASUALTY COMPANY

A Legal Reserve Stock Company . Home Office: 4444 West Lawrence Avenue . Chicago, Illinois 60630-4501

| NAME OF INSURED | ROYCE A BARRON | | 7271008 | POLICY NUMBER |
|---|---|---|---|---|
| AGE AND SEX | 51   MALE | | AUGUST 14, 1991 | DATE OF ISSUE |
| INITIAL SPECIFIED AMOUNT | $25,000 | | NON-SMOKER | PREMIUM CLASS |

This policy is a legal contract between the Company and the owner. READ YOUR POLICY CAREFULLY.

The Company will pay the proceeds as defined herein to the owner on the Maturity Date if the insured is living on that date. Upon receipt by the Company at its Home Office of due proof that the insured died before the Maturity Date and while this policy was in force, the Company will immediately pay the proceeds to the beneficiary.

All payments are subject to all of the provisions of this and the following pages of this policy signed on the Date of Issue at its Home Office. This policy is issued in consideration of the application and payment of the initial premium.

Secretary *Patricia E. Mullin*          President *B. T. Murphy*

### NOTICE OF 20 DAY RIGHT TO EXAMINE THE POLICY
This policy may be cancelled by delivering or mailing the policy to Bankers Life and Casualty Company or to the insurance agent through whom it was effected before midnight of the twentieth day after receipt of such policy by the applicant. Upon such delivery or mailing, the policy shall be void from the beginning. Notice given by mail and return of the policy or contract by mail are effective on being postmarked, properly addressed and postage prepaid. The Company must return all payments made for this policy within ten days after it receives notice of cancellation and the returned policy.

### FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

ADJUSTABLE DEATH BENEFIT. PROCEEDS PAYABLE AT DEATH PRIOR TO THE MATURITY DATE. PROCEEDS MAY EXCEED SUM INSURED. FLEXIBLE PREMIUMS PAYABLE DURING THE LIFETIME OF THE INSURED UNTIL THE MATURITY DATE. PREMIUMS ALLOCATED TO COST OF INSURANCE. BALANCE ACCUMULATES AT INTEREST IN AN ACCUMULATION ACCOUNT WHICH WILL VARY IN VALUE BASED UPON THE AMOUNT OF INTEREST CREDITED. NON-PARTICIPATING. NO DIVIDENDS APPLICABLE.

APPLICATION NUMBER:   7271008

BANKERS LIFE AND CASUALTY COMPANY

POLICY DATA PAGE

| | | |
|---|---|---|
| INSURED   ROYCE A BARRON | 7271008 | POLICY NUMBER |
| AGE     51  - MALE | AUGUST 14, 1991 | DATE OF ISSUE |
| PLAN    FLEX. PREM. ADJ. LIFE | $25,000 | INITIAL SPECIFIED AMOUNT |
| PREMIUM CLASS   NON-SMOKER | $41.67 | PLANNED PERIODIC PREMIUM |
| DEATH BENEFIT OPTION   A | $83.33 | INITIAL PREMIUM |
| MATURITY DATE   AUGUST 14, 2040 | $489.24 | MINIMUM ANNUAL PREMIUM |
| | $706.75 | QUALIFYING ANNUAL PREMIUM |
| | $5,000.00 | MINIMUM SPECIFIED AMOUNT |
| | MONTHLY | PREMIUM FREQUENCY |

MONTHLY COST OF INSURANCE SCHEDULE

| PLAN NUMBER | BENEFIT DESCRIPTION | SUM INSURED | MONTHLY COST OF INSURANCE | FIRST MONTHLY DEDUCTION | LAST MONTHLY DEDUCTION |
|---|---|---|---|---|---|
| 16F | FLEX. PREM. ADJ. LIFE | $25,000 | SEE PAGE 2A | 09/14/91 | 08/14/40 |
| 57U | ANNUAL RENEWABLE TERM | $25,000 | SEE PAGE 2K | 09/14/91 | 08/14/40 |

POLICY LOAN INTEREST IS CHARGED IN ADVANCE.

7271008      POLICY NUMBER

BANKERS LIFE AND CASUALTY COMPANY

POLICY DATA PAGE
(CONTINUED)

TABLE OF GUARANTEED MAXIMUM MONTHLY COST OF INSURANCE RATES
PER $1,000

| ATTAINED AGE | RATE | ATTAINED AGE | RATE | ATTAINED AGE | RATE |
|---|---|---|---|---|---|
| 51 | 0.6387 | 68 | 2.9438 | 85 | 14.5338 |
| 52 | 0.6975 | 69 | 3.2167 | 86 | 15.8725 |
| 53 | 0.7651 | 70 | 3.5273 | 87 | 17.2693 |
| 54 | 0.8386 | 71 | 3.8813 | 88 | 18.7217 |
| 55 | 0.9192 | 72 | 4.2913 | 89 | 20.2307 |
| 56 | 1.0039 | 73 | 4.7558 | 90 | 21.8432 |
| 57 | 1.0943 | 74 | 5.2677 | 91 | 23.5890 |
| 58 | 1.1898 | 75 | 5.8188 | 92 | 25.5811 |
| 59 | 1.2966 | 76 | 6.4011 | 93 | 28.0012 |
| 60 | 1.4132 | 77 | 7.0058 | 94 | 31.3933 |
| 61 | 1.5454 | 78 | 7.6441 | 95 | 36.8249 |
| 62 | 1.6947 | 79 | 8.3295 | 96 | 46.5495 |
| 63 | 1.8636 | 80 | 9.0933 | 97 | 67.1447 |
| 64 | 2.0495 | 81 | 9.9561 | 98 | 83.3333 |
| 65 | 2.2510 | 82 | 10.9415 | 99 | 83.3333 |
| 66 | 2.4664 | 83 | 12.0451 | | |
| 67 | 2.6963 | 84 | 13.2507 | | |

THE COST OF INSURANCE RATES SHOWN ABOVE ARE BASED ON THE COMMISSIONER'S
1980 STANDARD ORDINARY MORTALITY TABLE, AGE LAST BIRTHDAY.  ACTUAL
MONTHLY COST OF INSURANCE RATES WILL BE DETERMINED BY THE COMPANY BASED
ON ITS EXPECTATIONS AS TO FUTURE MORTALITY EXPERIENCE.  HOWEVER, THE
ACTUAL COST OF INSURANCE RATES WILL NOT BE GREATER THAN THOSE SHOWN ABOVE.

BASED UPON THE MINIMUM GUARANTEED INTEREST RATE OF 4.50% PER ANNUM AND
MAXIMUM COST OF INSURANCE, THIS POLICY WILL REMAIN IN FORCE UNTIL
AUGUST 14, 1994, PROVIDED: (1) THE PLANNED PERIODIC PREMIUM IS PAID EACH
TIME WHEN DUE; AND (2) NO CHANGES ARE MADE IN THE POLICY.

7271008      POLICY NUMBER

BANKERS LIFE AND CASUALTY COMPANY

POLICY DATA PAGE
(CONTINUED)

TABLE OF MINIMUM DEATH BENEFITS

| ATTAINED AGE | PERCENT OF ACCUMULATION ACCOUNT | ATTAINED AGE | PERCENT OF ACCUMULATION ACCOUNT |
|---|---|---|---|
| 0-40 | 250% | 65 | 120% |
| 45 | 215% | 70 | 115% |
| 50 | 185% | 75 | 105% |
| 55 | 150% | 90 | 105% |
| 60 | 130% | 95 AND OVER | 100% |

FOR AGES NOT SHOWN, THE APPLICABLE PERCENTAGE WILL BE DETERMINED BY
INTERPOLATING BETWEEN THE AGES THAT ARE SHOWN.

EXPENSE CHARGES

THERE IS A CHARGE OF  $3.00 PER MONTH PER POLICY.  THIS CHARGE MAY BE
INCREASED BY THE COMPANY AT A POLICY ANNIVERSARY AFTER THE POLICY HAS
BEEN IN FORCE FOR AT LEAST ONE YEAR, BUT NOT TO EXCEED  $5.00 PER MONTH
PER POLICY AND ONLY UPON THE GIVING OF 90-DAY PRIOR NOTICE OF AN
INCREASE TO THE OWNER.

THERE IS AN EXPENSE CHARGE OF  $0.11 PER MONTH FOR EACH $1,000 OF
INITIAL SPECIFIED AMOUNT.

THERE IS A PERCENTAGE OF PREMIUM CHARGE FOR THE FIRST POLICY YEAR ONLY,
EQUAL TO   70.0% OF PREMIUMS PAID TO THE COMPANY, BUT THE CHARGE WILL NOT
APPLY TO ANY PREMIUMS PAID IN EXCESS OF THE QUALIFYING ANNUAL PREMIUM.

TABLE OF SURRENDER CHARGES

| YEAR | SURRENDER CHARGE | YEAR | SURRENDER CHARGE |
|---|---|---|---|
| 1 | $525* | 6 | $498 |
| 2 | 525 | 7 | 470 |
| 3 | 525 | 8 | 442 |
| 4 | 525 | 9 | 415 |
| 5 | 525 | 10 AND OVER | NONE |

* THIS IS THE MAXIMUM SURRENDER CHARGE WHICH CAN BE MADE IN THE
  FIRST POLICY YEAR.  SEE SURRENDER CHARGE PROVISION ON PAGE 7.

A PRO RATA SURRENDER CHARGE WILL BE IMPOSED ON PARTIAL WITHDRAWALS IF
THE EFFECT OF SUCH PARTIAL SURRENDER IS TO REDUCE THE AMOUNT OF THE
SPECIFIED AMOUNT.   THE AMOUNT OF THE SURRENDER CHARGE WILL BE BASED UPON
THE PERCENTAGE OF REDUCTION IN THE SPECIFIED AMOUNT BUT WILL NOT BE
LESS THAN TWENTY-FIVE DOLLARS ($25.00).

NOTE:  AT SOME FUTURE TIME, THE POLICY CASH VALUE LESS INDEBTEDNESS
       MAY NOT COVER THE NEXT MONTHLY DEDUCTION.  IN SUCH A SITUATION,
       THE POLICY WILL ENTER THE GRACE PERIOD AND WILL TERMINATE AT
       THE END OF THAT PERIOD IF SUFFICIENT PREMIUM TO COVER THE
       MONTHLY DEDUCTION IS NOT PAID.

7271008      POLICY NUMBER

BANKERS LIFE AND CASUALTY COMPANY

POLICY DATA PAGE
(CONTINUED)

TABLE OF GUARANTEED POLICY VALUES

| END OF POLICY YEAR | ACCUMULATION ACCOUNT | CASH SURRENDER (LOAN) VALUE |
|---|---|---|
| 1 | $    0 | $    0 |
| 2 | 0 | 0 |
| 3 | 0 | 0 |
| 4 | 0 | 0 |
| 5 | 0 | 0 |
| 6 | 0 | 0 |
| 7 | 0 | 0 |
| 8 | 0 | 0 |
| 9 | 0 | 0 |
| 10 | 0 | 0 |
| 11 | 0 | 0 |
| 12 | 0 | 0 |
| 13 | 0 | 0 |
| 14 | 0 | 0 |
| 15 | 0 | 0 |
| 16 | 0 | 0 |
| 17 | 0 | 0 |
| 18 | 0 | 0 |
| 19 | 0 | 0 |
| 20 | 0 | 0 |
| AGE 60 | 0 | 0 |
| AGE 65 | 0 | 0 |

THE GUARANTEED VALUES SHOWN ABOVE ASSUME THAT THE PLANNED PERIODIC
PREMIUM IS PAID ON THE FIRST DAY OF EACH PREMIUM PAYMENT PERIOD IN THE
AMOUNT AND FOR THE MODE SPECIFIED ON THE POLICY DATA PAGE, AND THAT THERE
IS NO INDEBTEDNESS, NO PARTIAL SURRENDERS AND NO CHANGE IN THE SPECIFIED
AMOUNT OR DEATH BENEFIT OPTION, AND NO RIDERS ADDED TO THE POLICY.

BANKERS LIFE AND CASUALTY COMPANY

SCHEDULE (CONTINUED)

NAME OF INSURED  ROYCE A BARRON                    7271008      POLICY NUMBER

EFFECTIVE DATE: AUGUST 14, 1991

TABLE OF MONTHLY GUARANTEED COST OF INSURANCE RATES
PER $1,000 OF DEATH BENEFIT FOR RIDER FORM L-158W
LIFE INSURANCE PROTECTION RIDER

| ATTAINED AGE | RATE | ATTAINED AGE | RATE | ATTAINED AGE | RATE |
|---|---|---|---|---|---|
| 51 | 0.638700 | 68 | 2.943800 | 85 | 14.533800 |
| 52 | 0.697500 | 69 | 3.216700 | 86 | 15.872500 |
| 53 | 0.765100 | 70 | 3.527300 | 87 | 17.269300 |
| 54 | 0.838600 | 71 | 3.881300 | 88 | 18.721700 |
| 55 | 0.919200 | 72 | 4.291300 | 89 | 20.230700 |
| 56 | 1.003900 | 73 | 4.755800 | 90 | 21.843200 |
| 57 | 1.094300 | 74 | 5.267700 | 91 | 23.589000 |
| 58 | 1.189800 | 75 | 5.818800 | 92 | 25.581100 |
| 59 | 1.296600 | 76 | 6.401100 | 93 | 28.001200 |
| 60 | 1.413200 | 77 | 7.005800 | 94 | 31.393300 |
| 61 | 1.545400 | 78 | 7.644100 | 95 | 36.824900 |
| 62 | 1.694700 | 79 | 8.329500 | 96 | 46.549500 |
| 63 | 1.863600 | 80 | 9.093300 | 97 | 67.144700 |
| 64 | 2.049500 | 81 | 9.956100 | 98 | 83.333300 |
| 65 | 2.251000 | 82 | 10.941500 | 99 | 83.333300 |
| 66 | 2.466400 | 83 | 12.045100 | | |
| 67 | 2.696300 | 84 | 13.250700 | | |

THE MONTHLY COST OF INSURANCE RATES FOR LIFE INSURANCE SHOWN ABOVE
ARE BASED ON THE COMMISSIONERS 1980 STANDARD ORDINARY MORTALITY
TABLE, AGE LAST BIRTHDAY, CURTATE FUNCTIONS.

# BANKERS LIFE AND CASUALTY COMPANY
Home Office: 4444 West Lawrence Avenue . Chicago, Illinois 60630

### LIFE INSURANCE PROTECTION RIDER
### ANNUAL RENEWABLE TERM INSURANCE

This rider is issued in consideration of the application and payment of the cost of this rider. A copy of the application is attached to and made a part of the policy.

### DEFINITIONS
Policy means the policy to which this rider is attached;

Age means age last birthday;

Insured means the person named as insured in the policy;

Owner means the owner of the policy.

### BENEFITS
Upon receipt by the Company of due proof that the insured died while this rider was in force and before maturity of the policy, if the policy has a maturity date, the Company will pay to the beneficiary the amount of insurance provided by this rider at the time of death. The amount of insurance provided by this rider is shown on a Policy Data Page if this rider was issued at the same time as the policy. If this rider is issued after the policy is issued, the amount of insurance provided will be shown in a rider endorsement.

### BENEFICIARY
The beneficiary will be the beneficiary under the policy. Unless otherwise directed, this benefit will be paid in the same manner as the proceeds of the policy.

### INSURANCE AMOUNT CHANGES
The owner may make written request to change the death benefit amount after this rider has been in force for one year. No more than one change per year may be made.

For an increase, the Company requires evidence satisfactory to it that the insured is insurable. The increase will be effective on the date shown in a policy endorsement if the cost of insurance for the first month is paid.

A decrease will be effective on the date shown in a policy endorsement. The decrease will be applied first to any past increases in the reverse order in which they occurred. If the amount remaining in force would be less than $10,000, the decrease will not be made.

### COST OF INSURANCE DEDUCTION
The total monthly deduction for this rider is the insurance amount provided by this rider times the monthly cost of insurance rate divided by 1,000. The deduction will be made from the accumulation account of the policy.

### COST OF INSURANCE RATE
The monthly cost of insurance rate is based upon the insured's attained age, sex, and the premium class shown on a Policy Data Page. Attained age means age at the last birthday on the prior policy anniversary. Monthly cost of insurance rates are based upon the Company's expectations as to future mortality experience. Any change in the cost of insurance rates will apply to all insureds of the same age, sex and premium class.

The cost of insurance rates can never be greater than the rates shown in the table of Guaranteed Maximum Monthly Cost of Insurance Rates on a Policy Data Page. These guaranteed rates are based on the Commissioners 1980 Standard Ordinary Mortality Table, Age Last Birthday.

### TERMINATION
This rider will terminate at the earliest of the following dates:

1.  when the policy terminates;

2.  upon receipt of a written request for termination;

3.  the policy maturity date, if the policy has a maturity date

## REINSTATEMENT

If this rider was in force at the time the policy lapsed, it may only be reinstated if the policy is reinstated. The requirements for reinstatement of this rider are the same as those for reinstatement of the policy. The incontestability provision described in the Reinstatement section of the policy is applicable to any answer given to a question in the application for reinstatement of this rider.

## ERROR IN AGE OR SEX

If the age or sex of the insured under this rider has been misstated, the benefit payable will be calculated in the manner specified in the Error in Age or Sex provision of the policy.

## INCONTESTABILITY

The Company cannot contest this rider after it has been in force during the lifetime of the insured for 2 years from its effective date. For any increase in the death benefit, the 2 year period will begin on the effective date of the increase. Any contest will be on the basis of statements made in the application for the increase. This limitation on the Company's right to contest does not apply to nonpayment of the cost of this rider.

## SUICIDE

If the insured should die by suicide, while sane or insane, within 2 years from the effective date of this rider, the death benefit will be limited to the costs of insurance for this rider. For any increase in the death benefit, the 2-year period will begin on the effective date of the increase and the death benefit for the increase will be limited to the costs of insurance associated with the increase.

## GENERAL

This rider does not increase any cash or loan values of the policy.

All policy provisions of the policy apply to this rider unless changed by this rider.

## EFFECTIVE DATE

This rider is part of the policy to which it is attached. The effective date of this rider is the same as for the policy unless the rider is added at a later date. The effective date will then be shown below.

EFFECTIVE DATE----------------------------------------------------

Secretary   *Patricia E. Mullin*      President   *B. T. Murphy*

L-158W                                    R-2

**APPLICATION TO**
# INSURANCE TO
BANKERS LIFE AND CASUALTY COMPANY
4444 Lawrence Avenue • Chicago, Il. 60630

**1** BARRON, DEBBIE L
Print Applicant's Full Name (Last, First, & Middle Initial)

| **2.** First Name & Initial of Each Person to be Insured, and Last if not same as Applicant: | A. (Applicant) DEBBIE L | B. ROYCE A. BARRON | D. | E. | F. |
|---|---|---|---|---|---|
| Sex | F | m | | | |
| Married (M): Single (S) | m | m | | | |
| Relationship to Applicant | | SPOUSE | | | |
| Date of Birth (Mo/Day/Yr)/Age | / | / | / | / | / |
| State or Country of Birth | TN | FAYETTE | | | |
| Do Not Complete (for Person(s) Being Examined) U.S. Citizen? | Yes ☐ No ☐ | Yes ☐ No ☐ | Yes ☐ No ☐ | Yes ☐ No ☐ | Yes ☐ No ☐ |
| Height/Weight | 6 / 165 | | | | |

**3** LIFE PLAN NAME  LIFETIME II   PLAN NO. Life Time (LHGF)   If a UNIVERSAL LIFE is applied for, complete the following:

Benefit Amount $ $25,000
Term/Period LIFE

Death Benefit Option ☒ A  ☐ B
Planned Premium $ 41.67  Payable MONTHLY
Lump Sum Premium $

**3a.** APPLICATION OF EXCESS INTEREST (IF APPLICABLE)
☐ Paid-Up Additions  ☐ Reduce Premium  ☐ One Year Term  ☐ Other

**4** Request for Special Issue Date 8/14/91  ☐ No

**3b.** Additional Benefits Applied for by Rider
☐ Waiver of Prem  ☐ Accidental Death (Units)  ☐ Waiver of Cost Ins  ☐ Guaranteed Purchase Option
☐ Spouse Insurance  (units)
☐ Childrens Insurance  (units)
☐ Family Insurance  (units)
Payor Benefits ☐
☒  57u
$ 25,000  for 34 yrs.   Term Rider

**5 HOME ADDRESS** (List previous address in "REMARKS" Section 16, if residing here less than 2 years)
Street or P.O. Box  9148 GAINSBOROUGH DR
City/Town  MEMPHIS  State  TN
Zip Code  38133  Phone No.  (901) 388-6429

**6 BILLING ADDRESS** ☒ Same as Home Address
Name
Street or P.O. Box
City/Town ___ State ___ Zip Code

**7** Annual Premium Quoted $ 5 00 °°
Amt. Pre-Paid $  83.33  or ☐ COD
☐ Yes Auto Prem Loan
Premium To Be Paid
☐ Annual (12)  ☐ Quarterly (03)  ☐ PRD (01)
☐ Semi-Annual (06)  ☐ A/O (0)
☒ P.P.S.P. (01)  14 Th   Draft Date

**3** Beneficiary (Primary)  DEBBIE BARRON, WIFE, IF LIVING; OTHERWISE  WIFE 134  Relationship/Age
(Contingent)  LONNIE SHANE BROOKINS, SON  AND JEREMY WADE BROOKINS, SON, equally;  Relationship
OR TO the SURVIVOR  (Show additional beneficiaries, if any in Section 16, Remarks)

**9** Will any existing Life, Health, Accident & Sickness, Disability Income or Annuity Contract(s) be replaced or changed if this proposed policy is issued?
Yes ☐  No ☒

**10 EMPLOYMENT/FINANCIAL INFORMATION** (On Insured)     (On Payor If Payor Benefits Are Requested or Joint Insured)

a. Name of Employer  SELF
Business Address  Same as Home
Annual Income—This Occupation $ 25,000     $
Describe duties  CONTRACTOR  RESIDENTIAL CONSTRUCTIO-
b. Annual Income other than above. Earned $ ___ Unearned $ ___     Earned $ ___ Unearned $ ___

**11** (questions 1 thru 5 refer to proposed insured(s) and the applicant if payor benefits requested.)
Has any person to be insured:

|  |  | Yes | No | Details of Yes answers, and person(s) involved |
|---|---|---|---|---|
| 1. | Ever been declined, postponed, rated, or charged an extra premium for Life or Health insurance or offered a policy different from that applied for, or been refused reinstatement or renewal of Life or Health insurance? | ☐ | ☒ | |
| 2. | Applied for any other Life or Health insurance now pending or contemplated? | ☐ | ☒ | |
| 3. | Current plans to make, or in the past 12 months made any flight as a pilot, student pilot, or member of the crew of any aircraft (If Yes, complete aviation questionnaire). | ☐ | ☒ | |
| 4. | Current plans to engage in, or in the past 12 months engaged in parachuting, hang gliding, vehicle racing, skin or scuba diving or mountain climbing? (If Yes, complete appropriate questionnaire) | ☐ | ☒ | |
| 5. | Any intention of working or living outside the U.S.A. in the next 2 years? | ☐ | ☒ | |
| 6. | Smoked cigarette(s) in the past year? Show number per day. | ☐ | ☒ | |
| 7. | Had their drivers license suspended, or revoked or received two (2) or more moving violations in the past 3 years? If Yes, list license number. | ☐ | ☒ | |

**REDACTED**

052 (86)-MN

## 12   MEDICAL DATA (Do not complete 12 thru 15 for Persons being examined.)
### Has any person to be insured:

| | | Yes | No |
|---|---|---|---|
| a. | Been under observation or taking treatment or been advised to have any diagnostic test, hospitalization, or surgery which was not completed? | ☐ | ☒ |
| b. | In the past 9 months become pregnant? | ☐ | ☒ |
| c. | In the past 5 years, used: | | |
| | 1. Alcoholic beverages? If yes, to what extent? | ☒ | ☐ |
| | 2. Barbiturates, sedatives, tranquilizers, or morphine to excess unless prescribed by a physician? If yes, how often? | ☐ | ☒ |
| | 3. L.S.D., marijuana, cocaine, heroin, or any narcotic drug to excess? If yes, how often? | ☐ | ☒ |
| d. | In the past 10 years, been treated for alcoholism or any drug habit? | ☐ | ☒ |
| e. | Had a weight loss in the past year (10 pounds or more)? | ☐ | ☒ |
| f. | Had or been told they had an immune disorder or been advised not to donate blood? | ☐ | ☒ |

Details of Yes answers and person(s) involved:
C. APPROXIMATLY 6 BEER'S MONTH. SOCIAL ONLY.

## 13   Has any person to be insured ever, to the best of your knowledge and belief, had or does any person have (answer each question by checking the appropriate box or boxes). If "Yes", give details in question 14.

**A. Any Nervous or Mental Trouble?**    Yes ☐   No ☒
- ☐ Chronic Headaches
- ☐ Dizziness
- ☐ Epilepsy
- ☐ Nervous Breakdown
- ☐ Paralysis
- ☐ Mental Illness
- ☐ Meningitis

**B. Any Heart or Circulatory Trouble?**    Yes ☐   No ☒
- ☐ Chest Pains
- ☐ Heart Murmur
- ☐ Heart Disease
- ☐ Rheumatic Fever
- ☐ Stroke
- ☐ Varicose Veins
- ☐ High Blood Pressure

**C. Any Endocrine or Metabolic Trouble?**    Yes ☐   No ☒
- ☐ Diabetes
- ☐ Goiter
- ☐ Sugar in Urine

**D. Any Genito-Urinary or Breast Trouble?**    Yes ☐   No ☒
- ☐ Breast
- ☐ Kidney
- ☐ Prostate
- ☐ Reproductive Organ
- ☐ Venereal Disease
- ☐ Blood in Urine

**E. Any Lung or Respiratory Trouble?**    Yes ☐   No ☐
- ☐ Asthma
- ☐ Blood Spitting
- ☐ Bronchitis
- ☐ Shortness of Breath
- ☐ Persistent Hoarseness or Cough
- ☐ Pleurisy
- ☐ Throat
- ☐ Tuberculosis
- ☐ Emphysema

**F. Any Back, Joint, Bone, or Muscle Trouble?**    Yes ☒   No ☐
- ☐ Arthritis
- ☒ Back
- ☐ Herniated Disc
- ☐ Neuritis
- ☐ Gout
- ☐ Spine Disorder
- ☒ Rheumatism
- ☐ Sciatica

**G. Any Stomach, Digestive, Intestinal or Rectal Trouble?**    Yes ☐   No ☐
- ☐ Gall Bladder
- ☐ Intestines
- ☐ Jaundice
- ☐ Ulcer
- ☐ Liver
- ☐ Hernia

**H. Any of the following?**    Yes ☐   No ☐
- ☐ Cancer
- ☐ Cyst
- ☐ Ear Trouble
- ☐ Eye Trouble
- ☐ Leukemia
- ☐ Malaria
- ☐ Tumor

## 14   List full details of any sickness above, also give full details of any other sickness, disability, medical, mental or surgical treatments or check-ups in the past five (5) years. If None, check here ☐

| | | | Date of | | | | |
|---|---|---|---|---|---|---|---|
| Name | Conditions and Complications | Onset Mo. Yr. | Operation Mo. Yr. | Recovery Mo. Yr. | Days in Hosp. | Names and Addresses of Physicians/Hospitals/Clinics | |
| RUPTURED DISC | 11 YRS AGO | OPERATED ON | | NO PROBLEMS | 5 DAYS | DR UNKNOWN NO LONGER IN MEMPHIS - DR RAINEY? | |

## 15   Family Record

| | (Insured) | | | | (Payor or Joint Insured) | | |
|---|---|---|---|---|---|---|---|
| | Age if Living | Age at Death | Cause of Death | | Age if Living | Age at Death | Cause of Death |
| Father | | 65 | CANCER | | | | |
| Mother | 70 | | | | | | |
| Brothers and Sisters | #Living 3 | #Dead 0 | | | #Living | #Dead | |

## REMARKS

16

## ACKNOWLEDGMENTS

17

IT IS UNDERSTOOD AND AGREED: (1) That the statements if any contained in the application concerning past and present health are complete, true and correct. (2) Any policy issued as a result of this application shall, together with the application, constitute a single and entire contract of insurance. (3) No agent or medical examiner or any other person is authorized to accept risks, pass upon insurability, make or modify contracts or waive any of the Company's rights or requirements. (4) Any insurance issued as a result of the application will either (a) Not take effect unless and until the full first premium is paid and the policy is delivered during the proposed insured's lifetime and while the proposed insured is in the condition of health set forth in the application, or; (b) Take effect only as specified in the Conditional Receipt, if any, issued in conjunction with this application. (5) The applied for policy and rider form provisions concerning contestability and renewal provisions have been explained and are understood. (6) Ownership. The Applicant shall be the owner of any insurance applied for unless otherwise requested. (7) The Applicant will be informed whether or not this application has been accepted within 60 days or be given the reason for any further delay.

## PAYMENT OF PREMIUM          ☐ NOT APPLICABLE

18

READ THE CONDITIONAL RECEIPT **BEFORE** SIGNING. This is to certify that I have read the receipt and fully understand its conditions and limitations. I understand that no agent can waive or change the conditions and limitations of this receipt.

## AUTHORIZATION

19

In connection with an application for insurance currently made to Bankers Life and Casualty Company, I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person, that has any records or knowledge of me or any of the members of my family named in said application or of our health, to disclose to the Company or its reinsurers any such information upon presentation of this authorization or reproduction thereof. I also acknowledge receipt of the Investigative Consumer Report Notice and the MIB Disclosure Notice.

## SIGNATURES

20

**SIGNATURES**

Dated at City MEMPHIS   State Tn.   Zip 38122

this 14 Day of Aug. 19 91

**Signature** of Applicant(s) **X** _Arthur L. Bunn_
Social Security Number(s) ____

Proposed insured sign here, if other than Applicant. I consent to this application and confirm that the answers recorded above are complete and true.

**Signature** of Proposed Insured(s) **X** _Roger A. Bunn_
Relationship to Applicant HUSBAND
Social Security Number(s) ____ 4477

I have witnessed the signature of the Applicant and the proposed insured if different. I certify that I asked all the questions and truly and accurately recorded the answers contained herein. To the best of my knowledge and belief, the insurance applied for ☐ is or is likely, ☒ is not or is not likely to replace or change any existing policy(ies) or contract(s).

**Signature** of Licensed Resident Agent **X** _Wilma J. Millard_   No. D5556 B.O. 4161

**Signature** of Licensed Resident Agent **X** ____   No. ____

**REDACTED**

# GENT STATEMENT

## 1. ALL INFORCE INSURANCE INCLUDING BL&C

| COMPANY | YR. OF ISSUE | TYPE L=LIFE A=ANNUITY H=HEALTH DI=DISABILITY INCOME | CURRENT BENEFIT AMOUNT | ACCIDENTAL DEATH BENEFIT AMOUNT | PERSONS COVERED IF LESS THAN ALL |
|---------|--------------|---------------------------------------------------|------------------------|--------------------------------|----------------------------------|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**2.** Have the following Insurance Programs been updated in the past year:
☐ Homeowners _____ Expir. Date  ☐ Health  ☐ Disability Income  ☐ Legal  ☐ Automobile _____ Expir. Date
Are any of the above Insurance Programs currently with Bankers Life and Casualty or Bankers Multiple Line?

☐ Yes  ☐ No   If yes, specify which _____

**3.** How long have you known the proposed insured? 6 yRS _____

## 4. COMPLETE FOR ALL APPLICATIONS
Always check the appropriate box for source of business. (Check only one box.)

|  |  |  | Household Existing | New |
|--|--|--|--------------------|-----|
| Premium Notice | ☐ A | Advertising Contacts | ☐ E | ☐ J |
| Claim Check | ☐ B | A/O Contact | ☐ F | ☐ K |
| Status Card | ☐ C | Cold Canvas | ☐ G | ☐ L |
| Lapse Notice | ☐ D | Referral | ☐ H | ☐ M |
| | | Other | ☐ I | ☒ N |

**5.** Indicate which of the following requirements have been arranged?
☐ EKG  ☐ X-Ray  ☐ Medical  ☐ Para-Med Exam  ☐ Inspection  ☐ Other

☐ Report from Dr. _____
Dr. _____
Dr. _____

**6. Association/Organization Verification**—The Applicant is an employee/member in good standing of:

_Association/Organization_ _____ _Account Number_ _____

## 7. COMPLETE FOR RISKS AGE 65 OR OVER
What is the amount of monthly premium being paid on all in force and applied for coverage:

Life/Annuity Policies        $ _____
Health Insurance Policies    $ _____
TOTAL                        $ _____

**8.** Life insurance Needs Satisfied (Check the purpose)
a. ☒ Final Expense      d. ☐ Savings Plan      g. ☒ Mortgage/Loan Security
b. ☐ Estate Liquidity   e. ☐ Retirement         h. ☐ Family Income
c. ☐ Gift               f. ☐ Education          i. ☐ Business

## 9. COMPLETE FOR BUSINESS INSURANCE ONLY
Firm is
a. ☐ Corporation  ☐ Sole proprietorship  ☐ Partnership
b. Names of other officers or partners and amount of business insurance carried on their lives.

| Name | Age | Position | In-Force | Applied for |
|------|-----|----------|----------|-------------|
| | | | | |
| | | | | |
| | | | | |

c. Percent and value of business owned by Proposed insured. % _____ $ _____
d. If "key employee," salary for each of the last three years.
$ _____ $ _____ $ _____

e. Give an explanation in remarks of any difference in in-force and/or applied for coverage on partners, officers or key employees. _____

Remarks:

## OWNER, BENEFICIARY AND ASSIGNMENT PROVISIONS

**OWNER**
The owner means the owner set out in the application unless subsequently changed.  During the insured's lifetime, the owner has the right to receive every benefit, exercise every right and enjoy every privilege granted by this policy.

**BENEFICIARY**
The beneficiary named in the application will receive the proceeds upon death of the insured unless the beneficiary has been changed by the owner.

If more than one person is named as beneficiary, the proceeds will be paid in equal shares to the surviving beneficiaries, unless otherwise provided.

If the beneficiary is "children", this means children born to or legally adopted by the insured.

**DEATH OF BENEFICIARY**
If any beneficiary dies before the insured, that beneficiary's interest will pass to any surviving beneficiaries or contingent beneficiaries according to their respective interest.

If no beneficiary or contingent beneficiary survives the insured, the proceeds will be paid to the owner or the owner's estate.

**OWNER AND BENEFICIARY CHANGE**
The owner may change the owner and the beneficiary at any time during the lifetime of the insured unless otherwise provided in a previous designation.  Any change must be in written form satisfactory to the Company.

The change will take effect on the date the request was signed, but it will not apply to any payments made by the Company before the request was received and recorded by the Company.

**SIMULTANEOUS DEATH**
If any beneficiary dies within 15 days after the insured but before due proof of the insured's death is received by the Company, the proceeds will be paid as if the beneficiary died before such insured.

**ASSIGNMENT**
This policy may be assigned.  No assignment will be recognized by the Company unless a copy is filed with the Company.  The Company will not be responsible for the validity of any assignment.

The claim of any assignee is subordinate to that of the Company, including any indebtedness to the Company.

The rights of the beneficiary and owner are subject to the rights of the assignee.

## PREMIUM PAYMENTS, GRACE PERIOD AND REINSTATEMENT PROVISIONS

**INITIAL PREMIUM**
The initial premium is the premium due on the date of issue of this policy.  The initial premium cannot be less than one twelfth of the minimum annual premium.

**PLANNED PERIODIC PREMIUM**
The planned periodic premium is the premium shown on a Policy Data Page.

**QUALIFYING ANNUAL PREMIUM**
The qualifying annual premium for this policy is shown on a Policy Data Page.

**MINIMUM ANNUAL PREMIUM**
This policy at all issue ages, will not lapse during the first three policy years, if on each monthly anniversary date during the period (i) is greater than or equal to (ii) where:  (i) is the sum of all premiums paid to date minus any policy loans and minus any partial withdrawals, and, (ii) is one twelfth (1/12) of the minimum annual premium shown on a Policy Data Page, multiplied by the number of months elapsed since the date of issue of this policy, including the month following the monthly anniversary date.

**WHERE PAYABLE**
Premiums are payable in advance to the Company at its Home Office.  Premiums may be paid to an authorized representative of the Company upon delivery of a receipt signed by the President, Vice President, Secretary, or Assistant Secretary.

## AMOUNT AND FREQUENCY
The owner may change the amount of planned periodic premium. The Company reserves the right to limit the amount of any increase.

The frequency of premium payment shown on a Policy Data Page will serve only as an indication of the owner's preference as to probable future frequency of payment. The owner may change the frequency of planned periodic premium payment at any time. Each premium payment will be credited by the Company as described in the Accumulation Account provision.

A check or draft given for all or any part of a premium, unless paid upon its presentation to the bank or person drawn on, shall not be considered as payment.

## UNSCHEDULED PREMIUMS
Additional premiums, but not less than $25.00, may be paid at any time before the Maturity Date. The Company reserves the right to limit the number and amount of additional premium payments.

The Internal Revenue Code limits the amount of premiums payable under this policy for the death benefit to qualify for exclusion from gross income. If a premium in excess of that premium limitation is received, it will be treated in the manner elected in the application. If no election has been made, it will be refunded to the owner.

When a change is made under the Policy Change Provision, the premium limitation will be adjusted.

## GRACE PERIOD
If the cash surrender value on a monthly anniversary day will not cover the next monthly deduction, a grace period of 61 days from such monthly anniversary day will be allowed to pay a premium that will cover the monthly deduction. The Company will send a written notice 30 days before the end of the grace period to the owner's last address shown in the Company's records and to any assignee of record if the premium is not previously paid. The cash surrender value and the monthly deductions are described in the Non-forfeiture provision. If the insured dies during the grace period, any past due monthly deductions will be deducted from the proceeds. The policy will remain in force during the grace period, unless surrendered.

See Minimum Annual Premium section for the method of avoiding lapsation of the policy during the first three years.

## REINSTATEMENT
Subject to meeting the following conditions, the policy may be reinstated during the lifetime of the insured and before the maturity date, unless it was surrendered for cash. The requirements for reinstatement are:

1. Evidence of insurability satisfactory to the Company must be submitted;

2. A premium sufficient to pay any past due monthly deductions at the end of the grace period must be paid;

3. A premium sufficient to keep the policy in force for two months at time of reinstatement must be paid; and

4. Any indebtedness existing at the end of the grace period must be paid or reinstated.

Monthly deductions will not be due for the period of time between the end of the grace period and the date of reinstatement.

Upon reinstatement, surrender charges, if any, will then be reinstated in the amount shown on a Policy Data Page for the policy year of lapse. Such surrender charges will decrease in exactly the same manner they would have had the policy not lapsed.

The Suicide Exclusion and Incontestability sections will apply if the policy has been in force for less than 2 years. If the policy has been in force for 2 years during the lifetime of the insured, it will be contestable only as to statements made in the reinstatement application; and only for a period of 2 years from the effective date of reinstatement.

## DEATH BENEFIT PROVISION

This policy will provide one of the following death benefits in determining the proceeds of the policy:

1. Option A. The accumulation account is included in the specified amount.  The death benefit will be the greater of:

   a) the specified amount on the date of death, or

   b) the accumulation account on the date of death multiplied by the applicable percentage at the insured's attained age as shown in the Table of Minimum Death Benefits on a Policy Data Page.

2. Option B. The accumulation account is not included in the specified amount.  The death benefit will be the greater of:

   a) the accumulation account on the date of death, plus the specified amount on the date of death, or

   b) the accumulation account on the date of death multiplied by the applicable percentage at the insured's attained age as shown in the Table of Minimum Death Benefits on a Policy Data Page.

The death benefit option in effect on the date of issue is shown on a Policy Data Page.

## POLICY CHANGE PROVISIONS

**CHANGE IN SPECIFIED AMOUNT**

At any time after the second policy year, upon written request, the specified amount may be decreased, subject to the following conditions:

Specified Amount Decreases

   a) Any decrease will be effective on the monthly anniversary day on or next following receipt of the request by the Company.  A decrease will be applied against the initial specified amount or the current specified amount, if smaller.

   b) The specified amount remaining in force after any requested decrease may not be less than the Minimum Specified Amount shown on a Policy Data Page.

   c) The cash surrender value following the decrease must be greater than zero.

A prorata surrender charge will be deducted from the accumulation account.  The prorata charge will apply to the applicable surrender charge on the effective date of the decrease.  Future surrender charges will be reduced proportionately.

**CHANGE IN DEATH BENEFIT OPTION**

If the death benefit option is Option B, it may be changed to Option A.  The new specified amount will be the death benefit as of the effective date of change.  If the death benefit option is Option A, it may be changed to Option B.  The new specified amount will be the death benefit less the value of the accumulation account as of the effective date of change.

The effective date of change will be the monthly anniversary day on or next following the date the Company receives the request for change.

The death benefit option may not be changed if:

   i) such change will result in a specified amount below the Minimum Specified Amount shown on a Policy Data Page; or

   ii) after such change the policy would not qualify as a life insurance policy as defined at the date of change by Federal law or regulation.

No change may be made during the first policy year.

## NON-FORFEITURE PROVISION

**CASH VALUE**

The cash value of this policy is the value of the accumulation account less the surrender charge. The accumulation account on the date of issue will be the initial net premium. Net premium is the gross premium paid less the percentage of premium expense charge shown on a Policy Data Page.

The accumulation account on a monthly anniversary day will be calculated as (a) plus (b) plus (c) minus (d) minus (e) minus (f) where:

a)   is the accumulation account on the preceding monthly anniversary day;

b)   is one month's interest on item (a);

c)   is the premium paid (less the percentage of premium expense charge) plus interest credited to any premium received since the preceding monthly anniversary day;

d)   is the monthly deduction for the month preceding the monthly anniversary day;

e)   is one month's interest on item (d);

f)   is the amount of any partial withdrawals.

On any day other than a monthly anniversary day, the accumulation account will be calculated as (a) plus (c) minus (d) minus (f), using the definitions above.

**MONTHLY DEDUCTION**

The monthly deduction for a policy month will be calculated as (a) plus (b) where:

a)   is the cost of insurance plus the cost of additional benefits provided by rider for the policy month; and

b)   is the monthly expense charges as shown on a Policy Data Page.

**COST OF INSURANCE**

1.   The monthly cost of insurance for the policy is calculated as (a) multiplied by the result of (b) minus (c) where:

   a)   is the monthly cost of insurance rate as described in the Cost of Insurance Rates section;

   b)   is the insured's death benefit at the beginning of the policy month divided by 1.0036748;

   c)   is the accumulation account at the beginning of the policy month as described in the cash value section.

   Divide the result by $1,000.

2.   The monthly cost of insurance for any rider is shown in the Cost of Insurance Schedule for the rider shown on a Policy Data Page.

**COST OF INSURANCE RATES**

1.   The monthly cost of insurance rate for the policy is based on the insured's sex, attained age and premium class on the policy date of the policy.   Attained age means age on the prior policy anniversary.

   The guaranteed maximum monthly cost of insurance rates are shown on a Policy Data Page.

   Monthly cost of insurance rates will be determined by the Company based on its expectation as to future mortality experience.   Any change in such rates will apply uniformly to all members of the same age, sex and class.   The monthly cost of insurance rates will not be greater than those shown on a Policy Data Page.

2.   The monthly cost of insurance rate for any rider is shown or referred to in the Cost of Insurance Schedule section of a Policy Data Page.

**GUARANTEED INTEREST RATE**

The guaranteed interest rate is as described in the Accumulation Account provision but not less than 4.5% per year compounded yearly.

7614

NON-FORFEITURE PROVISION (Continued)

## CASH SURRENDER VALUE
At any time, the cash surrender value of this policy is:

1.    The accumulation account;
2.    less any indebtedness on this policy; and
3.    less a surrender charge, if any.

However, during the first policy year only, the cash surrender value is equal to the greater of: (i) the value computed according to the foregoing formula; or (ii) the sum of premiums paid on this policy which are in excess of the Qualifying Annual Premium, shown on a Policy Data Page, less indebtedness.

## SURRENDER CHARGE
The surrender charge which is shown on a Policy Data Page, is a charge against the accumulation account for surrender of the policy. It is not applicable to the surrender of a rider attached to the policy. See the Cash Surrender Value section which reflects a modification to the surrender charge in the first policy year only.

## SURRENDER
The owner may surrender this policy for its cash surrender value at any time before the policy terminates.

The Company may defer payment for not more than 6 months following receipt by the Company of the surrender request unless the surrender is to be applied to pay premiums on policies with the Company.

If a surrender is requested within 30 days after a policy anniversary, the cash surrender value will not be less than the cash surrender value on that anniversary, less any policy loans made on or after such anniversary.

## PARTIAL WITHDRAWALS
Partial withdrawals may be made from the accumulation account after this policy has been in force for one year. No more than one partial withdrawal may be made in one policy year. The minimum partial withdrawal which may be made is five hundred dollars. The maximum amount which may be withdrawn is the amount of the accumulation account less the surrender charge, if any, and less any indebtedness on the policy. The specified amount will be reduced by the amount of the withdrawal if death benefit Option A is in effect.

A pro rata surrender charge will be imposed against the accumulation account on partial withdrawals. The amount of the surrender charge will be based upon the percentage of reduction in the specified amount but will not be less than twenty-five dollars ($25.00).

If death benefit Option A is in effect, and subject to evidence of insurability satisfactory to the Company, the specified amount may be increased by the amount of a partial withdrawal. Such increased amount will be subject to the incontestability section of this policy. In such a case, a charge of only twenty-five dollars ($25.00) will be imposed against the accumulation account.

## CONTINUATION OF INSURANCE
The insurance on all insureds will continue until the earlier of:

1.    The monthly anniversary day on which the cash surrender value will not cover the monthly deduction for the following month; or
2.    the maturity date.

The amount of insurance under the policy is the death benefit as defined in the Death Benefit provision.

The amount of insurance under any rider is the death benefit of the rider.

While this policy is in force under this provision, it may be surrendered for its cash surrender value.

If the insured is living on the Maturity Date, the cash surrender value on that date will be paid to the owner.

This provision will not continue the policy beyond the Maturity Date or continue any rider beyond its termination date as provided in the rider.

## BASIS OF COMPUTATION

Minimum cash values are based on the Commissioners 1980 Standard Ordinary Mortality Table, Age Last Birthday with interest at 4.5% compounded yearly.

The non-forfeiture values for this policy are equal to or greater than those required by law. The non-forfeiture values are calculated in accordance with the Standard Non-Forfeiture Law. A detailed statement of the method of computing values has been filed with the insurance supervisory official of the state in which the application for this policy was signed.

## ACCUMULATION ACCOUNT

### INTEREST CREDITS

All premiums paid shall be credited to the accumulation account.

The interest rate to be credited monthly to the accumulation account, except to that portion borrowed as a policy loan, during each calendar quarter, or portion thereof, shall be equal to: seventy-five percent (75%) of the interest rate payable on the third business day immediately preceding each January 1, April 1, July 1, and October 1, by the Chemical Bank, New York, New York, or its successor(s) on three (3) month time certificates of deposit when that interest rate is below 16%; eighty percent (80%) of the interest rate payable by the Chemical Bank will be credited when the certificates of deposit interest rate is 16% or greater.

Interest in excess of the above rate may be credited to the accumulation account at the option of the Company based upon its expectations as to future interest rates. In no event will the accumulation account earn interest at a rate less than 4 1/2% per year.

Should the Chemical Bank or its successor(s) cease issuing three (3) month time certificates of deposit, the Company reserves the right to substitute the three month certificate of deposit interest rate of another national banking institution of the Company's choice. Such substitution shall be subject to approval by the insurance regulatory authority of the state of residence of the owner, if required.

That portion of the accumulation account equal to an outstanding policy loan balance will earn interest of 4 1/2% per year.

Premiums paid the Company will earn interest beginning on the first business day following the date of deposit of the premiums to the Company's account, but in no event later than the fifth business day immediately following receipt of such premiums at the Home Office of the Company except for the initial premium. The initial premium will earn interest beginning on the first business day immediately following approval for the issuance of this policy unless the premium is paid later. In such case, the premium will be credited in the normal manner for renewal premiums.

## LOAN PROVISION

### POLICY LOAN

The owner may obtain a loan at any time while this policy is in force and on the sole security thereof.

### LOAN VALUE

The loan value may not exceed the cash surrender value of the policy.

The Company may defer making a loan for not more than six months after application for the loan is made unless the loan is to pay premiums on policies with the Company.

### INDEBTEDNESS

Indebtedness means all existing loans on this policy plus earned interest which has either accrued or been added.

LOAN PROVISION (Continued)

## LOAN INTEREST

Loan interest may be paid in advance or in arrears, at the option of the owner.  This option may be chosen only at the Date of Issue.  If no option is chosen, loan interest will be payable in advance.

1.  The following section applies only to policies with interest charged in advance:

   a)   The amount which may be borrowed is that amount which, with any unpaid interest, will equal the cash surrender value as of the date of the policy loan.

   b)   Interest will be charged in advance on a loan from the date the loan is made or increased, at a yearly rate described below.  Interest is payable in advance as of the beginning of each policy year or when a loan is made or increased.

   c)   If interest is not paid when due, it is added to the loan.

2.  The following section applies only to policies with interest charged in arrears:

   a)   The amount which may be borrowed is that amount which, with interest to the next policy anniversary, will equal the cash surrender value as of the next policy anniversary.

   b)   Interest will be charged on a loan from the date the loan is made or increased, at a yearly rate described below.  Interest is payable at the end of each policy year.

   c)   If Interest is not paid when due, it is added to the loan.

3.  The loan interest rate is 7% per year if interest is charged in arrears, or 6.54% if charged in advance.

## REPAYMENT

A loan may be repaid at any time while this policy is in force.  A loan that exists at the end of the grace period may not be repaid unless this policy is reinstated.

## TERMINATION OF POLICY

At any time the total indebtedness equals or exceeds the cash value, the policy will terminate without value.

At least 31 days before the date the policy terminates, the Company will send a notice of its intention to void the policy, to the last known addresses of the owner and of any assignee of record.

## SETTLEMENT OPTIONS PROVISION

## ELECTION OF OPTIONS

Any amount payable at the death of the insured or any other termination of this policy will be paid in one sum unless otherwise provided.  All or part of this sum may be applied to any settlement option.

Payment under a combination of options, or payment to joint or successive payees, or payment to a beneficiary that is not a natural person may be elected only with the consent of the Company.

Any election must be made in writing to the Company.  The Company may require the policy for endorsement.

## ELECTION BY OWNER

During the lifetime of the insured, the owner may elect to have the proceeds paid under one of the payment options below.

ELECTION BY BENEFICIARY
At the time proceeds are payable to the beneficiary, the beneficiary may elect one of the payment options if proceeds are available to the beneficiary in a lump sum. The beneficiary has 12 months after payment becomes due to elect one of the following options.

PAYMENTS
Payments will be made monthly unless otherwise elected.

The Company has the right to change the frequency of payments in order to make a periodic payment of at least $25.

The option date under Options 1, 2, and 3 is the date the proceeds are payable, or the date of election, whichever is later. Interest under Options 4 and 5 will accrue from such date.

Under Option 3, proof of the age of the payee will be required at the time the first payment is due. The Company reserves the right to require proof that the payee is alive at the time of each payment.

CHANGE IN PAYMENTS
Partial withdrawal under Options 1 and 2 may not be made. All payments under Option 1 and 2 may be paid in one sum only with the consent of the Company. The value of any one sum payment will be the sum of any remaining guaranteed payments discounted at an interest rate of not less than 3% compounded annually.

Payments under Option 3 will be commuted only in event of death of the payee. Any payments that remain to be paid under Option 3 at the death of the payee will be paid in one sum. The value of the one sum payment will be the sum of the remaining guaranteed payments, discounted at an interest rate of not less than 3% compounded annually.

In the event additional interest is applicable to payments under Option 1, 2, or 3, any such payments, if paid in one sum, shall be discounted at an interest rate equal to that actually credited.

WITHDRAWAL
The minimum proceeds that may be applied under Option 4 or 5 is $1,000. The payee does not have the right to withdraw any portion of the proceeds under Option 4. The minimum proceeds that may be applied or may remain after a withdrawal under Option 5 is $1,000. The minimum amount that may be withdrawn is $1,000. Proceeds less than this amount will be paid in a lump sum to the payee.

The Company may postpone payment of any amount to be withdrawn for not more than 6 months from the date the written request for withdrawal is received in the Company's Home Office.

ASSIGNMENT
The proceeds payable under one of these option may not be assigned.

CLAIMS OF CREDITORS
To the extent permitted by law, proceeds will not be subject to any claims of a payee's creditors.

ADDITIONAL INTEREST
Additional interest, if any, paid over the guaranteed 3%, will be in an amount and by a method determined by the Company.

OPTION 1.
EQUAL PAYMENTS FOR A GUARANTEED PERIOD
Equal monthly payments for the number of years elected, not to exceed 25 years. Payment will begin on the option date.

OPTION 2.
EQUAL PAYMENTS OF A SPECIFIED AMOUNT
Equal monthly payments of at least $4.71 per month for each $1,000 of proceeds. Payments will begin on the option date and will continue until the proceeds and interest at the rate of 3% compounded annually are exhausted.

7616

SETTLEMENT OPTIONS PROVISION (Continued)

OPTION 3.
EQUAL PAYMENTS FOR LIFE
Equal monthly payments for a guaranteed period of 10, 15 or 20 years as elected and for life thereafter as shown in the table below.

### GUARANTEED MINIMUM MONTHLY PAYMENT
### FOR EACH $1,000 OF NET PROCEEDS

| Period Income Is Payable (Years) | Monthly Income | Period Income Is Payable (Years) | Monthly Income |
|---|---|---|---|
| 1 | $84.47 | 16 | $6.53 |
| 2 | 42.86 | 17 | 6.23 |
| 3 | 28.99 | 18 | 5.96 |
| 4 | 22.06 | 19 | 5.73 |
| 5 | 17.91 | 20 | 5.51 |
| 6 | 15.14 | 21 | 5.32 |
| 7 | 13.16 | 22 | 5.15 |
| 8 | 11.68 | 23 | 4.99 |
| 9 | 10.53 | 24 | 4.84 |
| 10 | 9.61 | 25 | 4.71 |
| 11 | 8.86 | | |
| 12 | 8.24 | | |
| 13 | 7.71 | | |
| 14 | 7.26 | | |
| 15 | 6.87 | | |

OPTION 4.
PROCEEDS LEFT AT INTEREST – WITHDRAWALS NOT ALLOWED
The proceeds may be left with the Company for a period of 1 to 25 years. Interest on the proceeds will be paid at the rate of 3% compounded annually. The interest may be left with the Company to accumulate or be paid at the following rate for each $1,000 of net proceeds.

1)   Annually $30.00.

2)   Semi–Annually $14.89.

3)   Quarterly $7.42.

4)   Monthly $2.47.

At the end of the period selected, the proceeds with accrued interest will be paid in one sum unless otherwise provided in the election.

OPTION 5.
PROCEEDS LEFT AT INTEREST – WITHDRAWALS ALLOWED
The proceeds may be left with the Company for a period of 1 to 25 years. Interest on the proceeds will be paid at the rate of 3% compounded annually. The interest may be left with the Company to accumulate or be paid at the following rate for each $1,000 of net proceeds.

1)   Annually $30.00.

2)   Semi–Annually $14.89.

3)   Quarterly $7.42.

4)   Monthly $2.47.

The payee may withdraw portions of the proceeds by request in writing to the Company. At the end of the specified period, any remaining proceeds with accrued interest will be paid in one sum

OPTION 3

AMOUNT OF EACH MONTHLY INSTALLMENT PER $1,000 NET PROCEEDS

|  |  |  |  | Monthly Income for Life with Guaranteed Period of:- MALE |  |  |  |
| Age of Payee* | 10 Years | 15 Years | 20 Years | Age of Payee* | 10 Years | 15 Years | 20 Years |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 6 | $2.83 | $2.83 | $2.83 | 46 | $4.14 | $4.10 | $4.03 |
| 7 | 2.84 | 2.84 | 2.84 | 47 | 4.21 | 4.16 | 4.09 |
| 8 | 2.86 | 2.86 | 2.86 | 48 | 4.29 | 4.23 | 4.15 |
| 9 | 2.87 | 2.87 | 2.87 | 49 | 4.37 | 4.31 | 4.21 |
| 10 | 2.89 | 2.89 | 2.89 | 50 | 4.45 | 4.38 | 4.28 |
| 11 | 2.90 | 2.90 | 2.90 | 51 | 4.54 | 4.46 | 4.34 |
| 12 | 2.92 | 2.92 | 2.92 | 52 | 4.64 | 4.55 | 4.41 |
| 13 | 2.93 | 2.93 | 2.93 | 53 | 4.74 | 4.63 | 4.48 |
| 14 | 2.95 | 2.95 | 2.95 | 54 | 4.84 | 4.72 | 4.55 |
| 15 | 2.97 | 2.97 | 2.97 | 55 | 4.96 | 4.82 | 4.61 |
| 16 | 2.99 | 2.99 | 2.99 | 56 | 5.07 | 4.91 | 4.68 |
| 17 | 3.00 | 3.00 | 3.00 | 57 | 5.19 | 5.01 | 4.75 |
| 18 | 3.02 | 3.02 | 3.02 | 58 | 5.32 | 5.11 | 4.82 |
| 19 | 3.04 | 3.04 | 3.04 | 59 | 5.45 | 5.21 | 4.89 |
| 20 | 3.07 | 3.06 | 3.06 | 60 | 5.59 | 5.32 | 4.95 |
| 21 | 3.09 | 3.09 | 3.08 | 61 | 5.74 | 5.42 | 5.02 |
| 22 | 3.11 | 3.11 | 3.11 | 62 | 5.89 | 5.53 | 5.08 |
| 23 | 3.13 | 3.13 | 3.13 | 63 | 6.05 | 5.64 | 5.13 |
| 24 | 3.16 | 3.16 | 3.15 | 64 | 6.22 | 5.75 | 5.19 |
| 25 | 3.19 | 3.18 | 3.18 | 65 | 6.39 | 5.85 | 5.24 |
| 26 | 3.22 | 3.21 | 3.21 | 66 | 6.56 | 5.95 | 5.28 |
| 27 | 3.24 | 3.24 | 3.23 | 67 | 6.75 | 6.05 | 5.32 |
| 28 | 3.27 | 3.27 | 3.26 | 68 | 6.93 | 6.15 | 5.36 |
| 29 | 3.30 | 3.30 | 3.29 | 69 | 7.12 | 6.25 | 5.39 |
| 30 | 3.34 | 3.33 | 3.32 | 70 | 7.31 | 6.33 | 5.42 |
| 31 | 3.37 | 3.37 | 3.36 | 71 | 7.51 | 6.42 | 5.44 |
| 32 | 3.41 | 3.40 | 3.39 | 72 | 7.70 | 6.49 | 5.46 |
| 33 | 3.44 | 3.44 | 3.42 | 73 | 7.89 | 6.56 | 5.48 |
| 34 | 3.48 | 3.48 | 3.46 | 74 | 8.08 | 6.62 | 5.49 |
| 35 | 3.52 | 3.51 | 3.50 | 75 | 8.26 | 6.67 | 5.49 |
| 36 | 3.57 | 3.56 | 3.54 | 76 | 8.43 | 6.71 | 5.50 |
| 37 | 3.61 | 3.60 | 3.58 | 77 | 8.60 | 6.75 | 5.51 |
| 38 | 3.66 | 3.65 | 3.62 | 78 | 8.76 | 6.78 | 5.51 |
| 39 | 3.71 | 3.70 | 3.67 | 79 | 8.90 | 6.81 | 5.51 |
| 40 | 3.76 | 3.75 | 3.71 | 80 | 9.02 | 6.83 | 5.51 |
| 41 | 3.82 | 3.80 | 3.76 |  |  |  |  |
| 42 | 3.87 | 3.85 | 3.81 |  |  |  |  |
| 43 | 3.94 | 3.91 | 3.87 |  |  |  |  |
| 44 | 4.00 | 3.97 | 3.92 |  |  |  |  |
| 45 | 4.07 | 4.03 | 3.97 |  |  |  |  |

* Age on the birthday coinciding with or next preceding the due date of the first installment.  Ages not illustrated are available upon request.

7617

SETTLEMENT OPTIONS PROVISION (Continued)

OPTION 3

AMOUNT OF EACH MONTHLY INSTALLMENT PER $1,000 NET PROCEEDS

| Age of Payee* | Monthly Income for Life with Guaranteed Period of: – FEMALE | | | Age of Payee* | | | |
|---|---|---|---|---|---|---|---|
| | 10 Years | 15 Years | 20 Years | | 10 Years | 15 Years | 20 Years |
| 10 | $2.83 | $2.83 | $2.83 | 50 | $4.14 | $4.10 | $4.03 |
| 11 | 2.84 | 2.84 | 2.84 | 51 | 4.21 | 4.16 | 4.09 |
| 12 | 2.86 | 2.86 | 2.86 | 52 | 4.29 | 4.23 | 4.15 |
| 13 | 2.87 | 2.87 | 2.87 | 53 | 4.37 | 4.31 | 4.21 |
| 14 | 2.89 | 2.89 | 2.89 | 54 | 4.45 | 4.38 | 4.28 |
| 15 | 2.90 | 2.90 | 2.90 | 55 | 4.54 | 4.46 | 4.34 |
| 16 | 2.92 | 2.92 | 2.92 | 56 | 4.64 | 4.55 | 4.41 |
| 17 | 2.93 | 2.93 | 2.93 | 57 | 4.74 | 4.63 | 4.48 |
| 18 | 2.95 | 2.95 | 2.95 | 58 | 4.84 | 4.72 | 4.55 |
| 19 | 2.97 | 2.97 | 2.97 | 59 | 4.96 | 4.82 | 4.61 |
| 20 | 2.99 | 2.99 | 2.99 | 60 | 5.07 | 4.91 | 4.68 |
| 21 | 3.00 | 3.00 | 3.00 | 61 | 5.19 | 5.01 | 4.75 |
| 22 | 3.02 | 3.02 | 3.02 | 62 | 5.32 | 5.11 | 4.82 |
| 23 | 3.04 | 3.04 | 3.04 | 63 | 5.45 | 5.21 | 4.89 |
| 24 | 3.07 | 3.06 | 3.06 | 64 | 5.59 | 5.32 | 4.95 |
| 25 | 3.09 | 3.09 | 3.08 | 65 | 5.74 | 5.42 | 5.02 |
| 26 | 3.11 | 3.11 | 3.11 | 66 | 5.89 | 5.53 | 5.08 |
| 27 | 3.13 | 3.13 | 3.13 | 67 | 6.05 | 5.64 | 5.13 |
| 28 | 3.16 | 3.16 | 3.15 | 68 | 6.22 | 5.75 | 5.19 |
| 29 | 3.19 | 3.18 | 3.18 | 69 | 6.39 | 5.85 | 5.24 |
| 30 | 3.22 | 3.21 | 3.21 | 70 | 6.56 | 5.95 | 5.28 |
| 31 | 3.24 | 3.24 | 3.23 | 71 | 6.75 | 6.05 | 5.32 |
| 32 | 3.27 | 3.27 | 3.26 | 72 | 6.93 | 6.15 | 5.36 |
| 33 | 3.30 | 3.30 | 3.29 | 73 | 7.12 | 6.25 | 5.39 |
| 34 | 3.34 | 3.33 | 3.32 | 74 | 7.31 | 6.33 | 5.42 |
| 35 | 3.37 | 3.37 | 3.36 | 75 | 7.51 | 6.42 | 5.44 |
| 36 | 3.41 | 3.40 | 3.39 | 76 | 7.70 | 6.49 | 5.46 |
| 37 | 3.44 | 3.44 | 3.42 | 77 | 7.89 | 6.56 | 5.48 |
| 38 | 3.48 | 3.48 | 3.46 | 78 | 8.08 | 6.62 | 5.49 |
| 39 | 3.52 | 3.51 | 3.50 | 79 | 8.26 | 6.67 | 5.49 |
| 40 | 3.57 | 3.56 | 3.54 | 80 | 8.43 | 6.71 | 5.50 |
| 41 | 3.61 | 3.60 | 3.58 | 81 | 8.60 | 6.75 | 5.51 |
| 42 | 3.66 | 3.65 | 3.62 | 82 | 8.76 | 6.78 | 5.51 |
| 43 | 3.71 | 3.70 | 3.67 | 83 | 8.90 | 6.81 | 5.51 |
| 44 | 3.76 | 3.75 | 3.71 | 84 | 9.02 | 6.83 | 5.51 |
| 45 | 3.82 | 3.80 | 3.76 | | | | |
| 46 | 3.87 | 3.85 | 3.81 | | | | |
| 47 | 3.94 | 3.91 | 3.87 | | | | |
| 48 | 4.00 | 3.97 | 3.92 | | | | |
| 49 | 4.07 | 4.03 | 3.97 | | | | |

* Age on the birthday coinciding with or next preceding the due date of the first installment.  Ages not illustrated are available upon request.

GENERAL PROVISIONS

**ENTIRE CONTRACT**
This policy, including any attached riders and the attached copy of the application are the entire contract.  This policy cannot be changed or any of its provisions waived, including any extension of time to pay premiums, except by the President, a Vice-President, or the Secretary.

All statements made in an application are assumed, in the absence of fraud, to be representations and not warranties.  No statement will be used to void this policy or defend against a claim unless it is contained in the application or a supplemental application.

Any changes, modifications, or waivers must be in writing.  No agent has authority to waive a complete answer to any question on the application, pass on insurability, make or alter any contract or waive any of the Company's other rights or requirements.

**INCONTESTABILITY**
This policy will be incontestable after it has been in force during the lifetime of the insured for 2 years from the date of issue except for non-payment of premiums.

Any requested additional benefit issued after the date of issue will be incontestable only after such additional benefit has been in force for two years during the lifetime of the insured following the effective date of such additional benefit.

**PROCEEDS**
Proceeds means the amount payable on the Maturity Date, or the surrender of this policy prior to the maturity date, or upon the death of the insured.

The proceeds payable on death will be the death benefit less any indebtedness.  If the policy is surrendered the proceeds will be the cash surrender value.  On the Maturity Date the proceeds will be the cash surrender value.

**PAYMENT OF PROCEEDS**
The proceeds are subject first to any indebtedness to the Company and then to the interest of any assignee of record.  Payments to satisfy any indebtedness to the Company and any assignee will be paid in one sum.

**PREMIUM CLASS**
The insured's premium class is shown on a Policy Data Page.

**AGE**
Age means age last birthday.

**ERROR IN AGE OR SEX**
If the age or sex of the insured has been misstated, the proceeds payable will be that which the most recent monthly deduction would have purchased at the correct age and sex.

**SUICIDE EXCLUSION**
If the insured commits suicide while sane or insane within two years after the date of issue, the amount payable by the Company will be limited to the premiums paid prior to the insured's death less any indebtedness and less any partial withdrawals.

**ELECTIONS, DESIGNATIONS, CHANGES AND REQUESTS**
All elections, designations, changes, and requests must be in a written form satisfactory to the Company and become effective when received and approved by the Company at its Home Office.

**NON-PARTICIPATING**
This is a non-participating policy.  This policy will not share in any of the Company's profits or surplus earnings.  The Company will not pay dividends on this policy.

**MATURITY DATE**
The Maturity Date is the policy anniversary on or next following the insured's 100th birthday while this policy is in force.  It is the date on which insurance coverage will terminate, no more premiums may be paid and the cash surrender value is paid to the owner.  It is possible that coverage will end prior to the Maturity Date if the premiums paid and interest credited are not sufficient to continue coverage to such date.

7618

GENERAL PROVISIONS (Continued)

**ANNUAL REPORT**
At least once a year, the Company will send the owner a report which shows premiums paid, expense charges, interest credited, mortality charges, outstanding loans, current cash value, cash surrender value, and all charges since the last report.

**PROJECTION OF BENEFITS AND VALUES**
The Company will provide a projection of future death benefits and the value of the accumulation account at any time upon written request and payment of a service fee. The fee payable will be the one then in effect for this service. The projection will be based on:

1) assumptions as to specified amounts, type of coverage option and future premium payments as may be specified by the owner, and

2) such other assumptions as are necessary and specified by the Company and/or the owner.

**EFFECTIVE DATE OF COVERAGE**
The effective date of coverage under this policy is as follows:

1. The date of issue is the effective date for all coverage provided in the original application.

2. The effective date for any addition to coverage will be the monthly anniversary date on or next following the date the application for the addition is approved by the Company.

**TERMINATION**
This policy will terminate when any one of the following events occur:

1. The owner requests that coverage terminate,

2. The insured dies,

3. The policy matures,

4. The grace period ends without payment of the required premiums,

5. The total indebtedness equals or exceeds the cash value.

**POLICY DATE**
Policy years and policy anniversaries are computed from date of issue.

Page 15

7619

FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

ADJUSTABLE DEATH BENEFIT.   PROCEEDS PAYABLE AT DEATH PRIOR TO THE MATURITY DATE.
PROCEEDS MAY EXCEED SUM INSURED.  FLEXIBLE PREMIUMS PAYABLE DURING THE LIFETIME OF THE
INSURED UNTIL THE MATURITY DATE.   PREMIUMS ALLOCATED TO COST OF INSURANCE.  BALANCE
ACCUMULATES AT INTEREST IN AN ACCUMULATION ACCOUNT WHICH WILL VARY IN VALUE BASED
UPON THE AMOUNT OF INTEREST CREDITED.  NON-PARTICIPATING.   NO DIVIDENDS APPLICABLE.

L-16A

7619

INTER-OFFICE CORRESPONDENCE

Send To:                          From:                    Date:

BSO 4161                          Life PS                  09-20-91
BSM Scott A Needham               Home Office
AGENT D5556 Norman J Mellard Jr

SUBJECT:  Debbie L Barron                 9148 Gainsborough Dr
                                          Memphis TN 38133

Pol.   7,271,008

We reissued the above policy with the addition of the Life Insurance
Protection Rider for $25,000.  We are sorry it wasn't added at issue as
it should have been.

Here is the reissued policy.  Please deliver it as soon as possible.
You may destroy the original policy.

If we can help you in any way, please tell us.

Sincerely,

*Barbara L. Raclawski*

Barbara L. Raclawski
Life Policyholders Service
(312)283-1100

04BLR 019728

*BANKERS LIFE AND CASUALTY COMPANY*
Life Division • PO Box 2053
Carmel, IN 46082-2053 • Telephone: (312) 396-6000

## IMPORTANT NOTICE:  YOUR INSURANCE PAYMENT IS DUE

BARRON DEBBIE L
PO BOX 495
ELLENDALE   TN 38029

DUE DATE:                08/14/11
POLICY:              7,271,008
LIFE INSURANCE

PLEASE SEE THE BACK OF THIS
NOTICE FOR DETAILS ON
I-PAL. BANKERS INTERACTIVE
POLICYHOLDER ACCESS LINE:
1-800-621-3724 →

· Dear Policyholder:

You made a wise decision when you purchased your life insurance policy. It is a unique, flexible plan which is a combination of pure insurance protection and an accumulation account. Remember, interest is credited to your policy once each month and will be earned from the day we receive your payment. And, under current tax law, interest accumulates on a tax deferred basis. This way, more of your money works for you!

Make another WISE DECISION and send your payment today. The more you pay now, the faster your cash value will grow. You'll have that much more money put aside for future needs.

Sincerely,

Policyholder Services

65 GERMANTOWN CT STE 425
CORDOVA  TN 38018
Phone: (901)756-8867
Agent: MARGHERITA WESTERVELT

If you have any questions about your coverage, please contact your Servicing Office listed above.

EXHIBIT
B

tabbies®

EXHIBIT

C

DEBORAH LANE BARRON OR
PO BOX 495

ELLENDALE, TN 38029

COPY REFERENCE: 20120718000700      AA
07/19/12 09:01:55 1 WEB JOBT20719090140
0077302480  20110808      07
500.00                              000000

DEBORAH LANE BARRON  03-11
ROYCE ALVA BARRON
9155 MEMPHIS ARLINGTON RD.
LAKELAND, TN  38002

87-4/840
1000135897302

133

Date 8-4-11

Pay to the
order of Bankers Life + Casualty            | $ 500 00

Five hundred + 00/100 ———————— Dollars

SunTrust   ACH RT D810000104

080811 000020 000 00037271003

Memo policy# 7,271,008          Debbie Barron

000020 000 080811 810 387,46     2043000261<
00037271003                      CREDIT TO PAYEE
00006300000261 PIT *371836       PITTSBURGH
6638-010     00002011            ABS END GUAR
0100001490

00202211      07UP50 000 010 502 M1

**REDACTED**



*BANKERS LIFE AND CASUALTY COMPANY*
*Life Division • 600 West Chicago Ave*
*Chicago, IL 60654-2800 • Telephone. (312) 396-6000*

ROYCE BARRON                                    FEBRUARY 14, 2012
9746 LEEWARD SLOPES DR
LAKELAND TN 38002                               Policy   7,271,008

Dear Policyholder:

We have not received sufficient premium to keep your policy in force.
Perhaps it was an oversight.  Your grace period ends on 03-15-12.  We
need a payment before that date or your policy will lapse.

Your policy is designed to keep up with today's fast changing economy.
It gives you life insurance at low cost with the potential for
attractive cash earnings.  It lets you adjust your insurance needs at
your option as you go through economic and family changes.

Please send $490.16 with this letter before the grace period ends.
You can send more if you wish.  It is to your advantage to send as
large a payment as possible.

Act now to safeguard your present and future financial security.  If
you have any questions, your Bankers agent is always just a phone call
away at 901-756-8867.

Sincerely,

Policy Service Department

BANKERS LIFE AND CASUALTY COMPANY
P.O. Box 1938
Carmel, IN 46082-1938
(800) 654-3072



EXHIBIT

E

April 6, 2012

Royce Barron
9746 Leeward Slopes Dr
Lakeland, TN 38002

Re: Bankers Life and Casualty Company       For local service, contact:
    Insured: Royce Barron                    Branch Sales Office 4161
    Policy: 7271008                          65 GERMANTOWN CT STE 425
                                             CORDOVA, TN 38018
Dear Royce Barron:                           Phone: (901) 756-8867
                                             Agent: NONE

Thank you for the opportunity to serve your insurance needs.
Unfortunately, the application submitted was invalid due to
following reasons.

( )  Missing required additional information to "Yes" answers in
     Section 1(a) and (e).

In order to apply for reinstatement, complete and return the
enclosed application and Authorization for Underwriting Form, for
review by our underwriting department.  If any additional
information is needed, you will be contacted at that time.

The reinstatement process requires completion of a reinstatement
application, authorization for underwriting form, approval by our
Underwriting Department and remittance of premiums due.

If you have any questions, please contact our office.  We want to
assure you of our continued commitment to provide you with the best
possible service.

Sincerely,

Customer Service Department

BLC0146
4RY

BLC2PB

F

May 4, 2012

To whom this may concern:

The reason the policy was cancelled due to non-payment is because we moved. And did not receive cancellation notice. We notified Bankers Life of our address change in January or February of 2012. Our payment is one payment a year. Easy to forget exact date it's due without a bill or notification. The payment was due by March 31, 2012 and we received forwarded mail from old address the first part of April and called immediately.

Of course, I am not as fit as I was 22 years ago, but the issue here is the fair thing to do. I think if this were heard by a jury, the majority of people would like to think Bankers Life would do the fair option to re-instate the policy, rather than a big insurance company taking an unfair advantage to save money. This is only a $50,000 policy, but all I have and have faithfully paid premiums for over 20 years. When I contacted your representative and told her it was sent to old address and I preceded to give her my new address she finished the new address before I could finish. This proves she had it in the computer but they sent it to old address. This was mailing dept's mistake.

Thank you,

Royce Barron

P.S. We also took medicare supplement out with your company, but had to cancel after several price increases.

BANKERS LIFE AND CASUALTY COMPANY

| POLICY NUMBER | | PREMIUM DUE DATE |
|---|---|---|

### USE THIS FORM TO PUT YOUR
### POLICY BACK IN FORCE

| | 1 MONTH | 3 MONTHS | 6 MONTHS | 12 MONTHS |
|---|---|---|---|---|

**FILL OUT AND RETURN THIS NOW.**
SEND YOUR CHECK OR MONEY ORDER FOR AT LEAST ONE MONTH'S PREMIUM, UNLESS A DIFFERENT AMOUNT IS REQUESTED. YOU WILL HAVE A 31-DAY GRACE PERIOD IN WHICH TO PAY YOUR NEXT REGULAR PREMIUM.

TO BANKERS LIFE AND CASUALTY COMPANY, Chicago, Illinois 60654-2001 (hereinafter called the Company)

I hereby apply to reinstate the above numbered policy. I understand and agree that the reinstatement, if effected, shall be based upon my answers to the following questions and I represent that, to the best of my knowledge and belief, my answers to such questions are complete, true and correct.

The questions below apply to the person named as the Insured in the policy to be reinstated. If the policy provides Family coverage, the questions also apply to the persons insured as Family members. If the policy provides for a Payor Benefit, the questions also apply to the person insured as the Payor.

(1) To the best of your knowledge and belief, since the date of application of the policy described above, has any person to be insured by the policy following reinstatement

YES  NO

(a) Consulted, or been examined by, or medically or surgically treated by a physician ☑ ☐

(b) Had more than a ten pound weight gain or loss? . . . . . . ☐ ☑
If yes, how many pounds? _____ Over what period of time? _____

(c) Been declined, restricted, rated up or postponed upon application for issue, reinstatement, or renewal of personal insurance? . . . . . . . . . . . . . . . . . . . . ☐ ☑

(d) Changed occupation or duties? . . . . . . . . . . . ☐ ☑
If yes, describe new occupation or duties.

(e) Indulged in alcoholic beverages? . . . . . . . . . . . ☐ ☑
If yes, how often and to what extent?

(f) Used barbiturates, amphetamines, hallucinogens or heroin, opiates or other narcotics, except as prescribed by a physician? ☐ ☑

(g) Made or does he contemplate making any aircraft flights other than as a fare-paying passenger? . . . . . . . . . . . ☐ ☑

(h) Engaged or does he contemplate engaging in the following avocational activities: racing, snowmobiling, snow or water skiing, surfboarding, skin, scuba or sky diving, karate or judo? . . . . . . . . . . . . . . . ☐ ☑

(2) To the best of your knowledge and belief

(a) Is every person to be insured by the policy upon reinstatement in good health and free from mental or physical deformity or defect, except as noted above? . . . . . . ☐ ☑

(b) Is any woman to be insured by said policy upon reinstatement
(i) pregnant? . . . . . . . . . . . . . . . . . . . . ☐ ☑
(ii) If yes, how many months? _____

If any question in section (1) or if question (2) (b) is answered "Yes," or if question (2) (a) is answered "No," give full details, including: Names and dates of ailments; Names and addresses of physicians, hospitals and other insurance companies. (Also names of Family members or Payor if applicable.)

I understand and agree that no agent has authority to waive the answers to any question of this application, to pass on insurability, to waive any of the Company's rights or requirements, nor to alter the policy. I further understand and agree that the policy, if reinstated, shall be contestable due to misrepresentation of material facts stated herein for the period of two years from the date of reinstatement.

I understand and agree that the policy shall not be considered as reinstated nor shall any payment of premiums made in advance, or any receipt therefor, be binding upon the Company until this application shall be approved by the Company at its Home Office during the lifetime of each person to be insured by the policy upon reinstatement and while such persons are in good health, subject to the conditions herein set forth and the provisions of the policy.

X _____
(Signature of Insured)

_____
(Dated)

X _____
(Witness)

X _____
(Signature of Owner, if other than Insured)

NOTICE: The answers to the questions above are to be filled in by the Insured and his signature must be witnessed. FOR PROMPT HANDLING PLEASE BE SURE ALL QUESTIONS ARE FULLY ANSWERED.

L-1427D       MAKE ALL CHECKS PAYABLE ONLY TO BANKERS LIFE AND CASUALTY COMPANY       (7/94)

EXHIBIT

G



# Apperson Crump
### The Law in Memphis Since 1865

APPERSON CRUMP PLC
ANNE E. KUTSIKOVICH
6070 Poplar Avenue
Sixth Floor
Memphis, TN 38119

901-756-6300
901-757-1259 fax

www.appersoncrump.com

Facsimile

TO:   Bankers Life and Casualty Company
      Policy Holder Services
      (312) 324-5060

RE: Account #7-271-008

To whom it may concern:

Enclosed is a Power of Attorney, granting Anne E. Kutsikovich the power and authority to discuss and negotiate all relevant issues pertaining account #7-271-008, owned by Mr. Royce Barron.

Best Regards,

*Anne E. Kutsikovich*

Anne E. Kutsikovich

---

```
*********************************************************************
*
*           TOTAL :   1M 0S PAGES: 2
*
*─────────────────────────────────────────────────────────────────
*  738        OK       2 FAX TX   1'00"      13132345060  JUN-29 10:10 AM
*─────────────────────────────────────────────────────────────────
*  #M  DP        NOTE    PAGES TYPE   TX TIME   RECEIVER   DATE START
*                                                          SEND
*─────────────────────────────────────────────────────────────────
*                                                          FOR:
*
*  JUN-29-2012 FRI 10:11 AM            TRANSACTION REPORT
*  P.01
*********************************************************************
```



APPERSON CRUMP PLC
ANNE E. KUTSIKOVICH
6070 Poplar Avenue
Sixth Floor
Memphis, TN 38119

901-756-6300
901-757-1296 fax

www.appersoncrump.com

<u>Facsimile</u>

TO:    Bankers Life and Casualty Company
       Policy Holder Services
       (312) 324-5060

RE: Account #7-271-008

To whom it may concern:

Enclosed is a Power of Attorney, granting Anne E. Kutsikovich the power and authority to discuss and negotiate all relevant issues pertaining account #7-271-008, owned by Mr. Royce Barron.

Best Regards,

Anne E. Kutsikovich



<u>Specific Power of Attorney</u>

I, Royce Barron, who resides at 9155 Memphis Arlington, Lakeland, Tennessee, 38002, do hereby grant to my attorney, Anne E. Kutsikovich, of Apperson Crump PLC, for all purposes whatsoever as I might or could do if acting personally, the authority to discuss, negotiate, inquire, modify, amend, and/or take any other actions pertaining to my life insurance policy with Bankers Life and Casualty Company, Policy No. 7271008.

This authority shall be binding to all beneficiaries of the policy, and unlimited in duration until further notice.

**IN WITNESS WHEREOF,** I have hereunto set my hand this 25th day of June, 2012.

*Royce Barron*
Royce Barron, Policyholder


**STATE OF Tennessee**

**COUNTY OF** ___Shelby___


    Personally appeared before me, a Notary Public in and for said State and County, **Royce Barron**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that he executed the within instrument for the purposes therein contained.

    WITNESS my hand, at office, this ___25th___ day of June, 2012.

                                              
Notary Public

My commission expires: _____





EXHIBIT

H

July 2, 2012

<u>VIA FACSIMILE (317) 817-2726 AND TO (312) 324-507, REGISTERED MAIL RETURN RECEIPT
REQUESTED AND U.S. MAIL</u>

Bankers Life and Casualty Company
11825 N. Pennsylvania
Carmel, Indiana 46032
Attn: Consumer Relations

Certified Article Number

7196 9008 9111 2081 1462

SENDERS RECORD

RE: Policy #7-271-008 and Legal Dispute

To whom it may concern:

We represent Royce Barron in this matter. Royce Barron is a policyholder with Bankers Life and
Casualty Company. Mr. Barron has been a policyholder with your company for many years, and has
always been a loyal client.

In or around January of 2011, our client relocated from 9746 Leeward Slopes, Lakeland TN, 38002. At
such time, our client notified your company of the change of address and directed that all future mail be
delivered to PO Box 495, Ellendale, TN 38029. Your company noted this change of address and
subsequently sent information pertaining to policy #7-271-008, of which we have copies, to this PO Box.

On or around February, 2012, you sent a notice to our client at his former and incorrect address in
Lakeland, TN, stating that the policy was overdue and must be paid by March 15, 2012, to avoid
cancellation. This letter was ultimately forwarded by the US Post Office to our client, but did not arrive
at the correct address until April of 2012. Upon receipt, our client immediately called your company and
requested to send in payment for the overdue balance. At such time, our client was informed that the
policy had been cancelled, and that to reactivate the account, a new application would need to be
completed, including a new health history. Our client went through the time consuming process to
complete such request, and was ultimately denied reinstatement.

ANNE E. KUTSIKOVICH
Direct Dial 901.260.5159
akutsikovich@appersoncrump.com

APPERSON CRUMP PLC, ATTORNEYS AT LAW
Memphis · Nashville

6070 Poplar Avenue, Suite 600, Memphis, TN 38119-3954
Tel 901-756-6300 · Fax 901-757-1296

It is our belief that your company has acted in bad faith in directing our client to submit a new application to reactivate his prior policy. But for your negligence in sending mail to the wrong address, this policy would have been timely paid and current. We ask that an agent from your company immediately call our office to discuss a solution. If we do not hear from your company by July 16, 2012, we will have no other option but to seek appropriate remedies in a court of equity.

We look forward to receiving your call.

Best Regards,

Anne E. Kutsikovich

Anne E. Kutsikovich



```
                          TRANSACTION REPORT                              P.01
                         ─────────────────────
                                                    JUL-02-2012 MON 01:43 PM

       FOR:

       SEND
  ─────────────────────────────────────────────────────────────────────────
   DATE  START    RECEIVER          TX TIME  PAGES TYPE      NOTE        M# DP
  ─────────────────────────────────────────────────────────────────────────
   JUL-02 01:42 PM 13178172726       1'49"    3  FAX TX      OK             738

                                    TOTAL :    1M 49S  PAGES:   3
```

LAW OFFICES
**APPERSON CRUMP, PLC**
6070 Poplar Avenue, Sixth Floor
Memphis, Tennessee 38119
(901) 756-8300
Facsimile (901) 757-1296

## FAX TRANSMITTAL SHEET

DATE:                    July 2, 2012    CLIENT NO.

DELIVER TO:              Bankers Life and Casualty Company
                         Attn: Consumer Relations

FAX NUMBER:              (317) 817-2726

NO OF PAGES
INCLUDING COVER:         3

FROM:                    Annie E. Kutalkovich, Esq.

Comments:

In reference to Policy #7-271-III0II, attached please find a copy of my letter to you of even date.

Thank you

(901) 756-8300, extension 5130

*CONFIDENTIALITY NOTICE:*
*The information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this FAX is strictly prohibited. If you have received this FAX in error, please immediately notify us by telephone and return the original message to us at the above address via the U.S. Postal Service. Thank you.*

LAW OFFICES
APPERSON CRUMP, PLC
6070 Poplar Avenue, Sixth Floor
Memphis, Tennessee  38119
(901) 756-6300
Facsimile (901) 757-1296

# FAX TRANSMITTAL SHEET

DATE:                          July 2, 2012      CLIENT NO.

DELIVER TO:                    Bankers Life and Casualty Company
                               Attn:  Consumer Relations

FAX NUMBER:                    (317) 817-2726

NO OF PAGES
INCLUDING COVER:               3

FROM:                          Annie E. Kutsikovich, Esq.

Comments:

In reference to Policy #7-271-008, attached please find a copy of my letter to you of even date.

Thank you

(901) 756-6300, extension 5130
*********************************************************************************************************

CONFIDENTIALITY NOTICE:
The information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this FAX is strictly prohibited. If you have received this FAX in error, please immediately notify us by telephone and return the original message to us at the above address via the U.S. Postal Service. Thank you.

```
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
X                                                                    ⁅.01      X
X                         TRANSACTION REPORT                                    X
X                         ------------------                                    X
X                                                  JUL-02-2012 MON 01:45 PM     X
X     FOR:                                                                      X
X                                                                              X
X------------------------------------------------------------------------------X
X     SEND                                                                      X
X                                                                              X
X   DATE  START    RECEIVER         TX TIME  PAGES TYPE      NOTE         M# DP X
X------------------------------------------------------------------------------X
X   JUL-02 01:44 PM 13123245060      1'09"    3  FAX TX       OK           739  X
X------------------------------------------------------------------------------X
X                                                                              X
X                                     TOTAL :    1M  9S  PAGES:  3              X
X                                                                              X
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
```

LAW OFFICES
APPERSON CRUMP, PLC
6070 Poplar Avenue, Sixth Floor
Memphis, Tennessee 38119
(901) 756-6300
Facsimile (901) 757-1296

## FAX TRANSMITTAL SHEET

DATE:                    July 2, 2012    CLIENT NO.

DELIVER TO:              Bankers Life and Casualty Company
                         Attn: Consumer Relations

FAX NUMBER:              (312) 324-5060

NO OF PAGES
INCLUDING COVER:         3

FROM:                    Annie E. Kutsikovich, Esq.

Comments:

In reference to Policy #7-271-000, attached please find a copy of my letter to you of even date.

Thank you

(901) 756-6300, extension 5130

CONFIDENTIALITY NOTICE:
This information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity
named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this FAX is
strictly prohibited. If you have received this FAX in error, please immediately notify us by telephone and return the original message to us at the above
address via the U.S. Postal Service. Thank you.

LAW OFFICES
APPERSON CRUMP, PLC
6070 Poplar Avenue, Sixth Floor
Memphis, Tennessee  38119
(901) 756-6300
Facsimile (901) 757-1296

# FAX TRANSMITTAL SHEET

DATE:                          July 2, 2012      CLIENT NO.

DELIVER TO:                Bankers Life and Casualty Company
                                    Attn:  Consumer Relations

FAX NUMBER:             (312) 324-5060

NO OF PAGES
INCLUDING COVER:       3

FROM:                          Annie E. Kutsikovich, Esq.

Comments:

In reference to Policy #7-271-008, attached please find a copy of my letter to you of even date.

Thank you

(901) 756-6300, extension 5130
***********************************************************************************************

CONFIDENTIALITY NOTICE:
The information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this FAX is strictly prohibited.  If you have received this FAX in error, please immediately notify us by telephone and return the original message to us at the above address via the U.S. Postal Service.  Thank you.

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

August 09, 2012

Bankers Life & Casualty Company          Certified Mail
2908 Poston Avenue, % C S C               Return Receipt Requested
Nashville, TN  37203                      7011 2970 0003 4363 7795
NAIC # 61263                              Cashier # 4617

Re:   Royce Barron   V.   Bankers Life & Casualty Company

      Docket # Ch-12-1218-1

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of Commerce and Insurance was served August 09, 2012, on your behalf in connection with the above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Chancery Court Clerk
    Shelby County
    140 Adams Street, Rm 308
    Memphis, Tn  38103



(CIRCUIT (CHANCERY) COURT OF TENNESSEE
140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

## SUMMONS IN CIVIL ACTION

Docket No. CH-12-1218-1

☑ Lawsuit
○ Divorce

Ad Damnum $ _____

| Royce Barron | VS | Banker's Life Insurance and Casualty Company |
|---|---|---|
| Plaintiff(s) | | Defendant(s) |

TO: (Name and Address of Defendant (One defendant per summons))

BANKER'S LIFE AND CASUALTY COMPANY
Attn: Commissioner, Insurance
Tennessee Department of Commerce and Insurance
500 James Robertson Parkway
Nashville, Tennessee 37243

Method of Service:
☑ Certified Mail
○ Shelby County Sheriff
○ Commissioner of Insurance ($)
○ Secretary of State ($)
○ Other TN County Sheriff ($)
○ Private Process Server
○ Other
($) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and serving a copy of your answer to the Complaint on  Anne E. Kutsikovich  Plaintiff's attorney, whose address is  6070 Poplar Avenue, Memphis TN 38119 , telephone  +1 (901) 260-5159 within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

Donna L. Russell ___ Clerk

TESTED AND ISSUED  27 July 2012                              , D.C.

TO THE DEFENDANT:

NOTICE: Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a four thousand dollar ($4,000) personal property exemption from execution or seizure to satisfy a Judgment. If a Judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the Judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

FOR AMERICANS WITH DISABILITIES ACT (ADA) ASSISTANCE ONLY, CALL (901) 379-7895

I, Donna L. Russell ___, Clerk of the Court,
Shelby County, Tennessee, certify this to
be a true and accurate copy as filed this

27 July 2012

Donna L. Russell ___, Clerk

By: _____

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Banker's Life & Casualty Co.
Tennessee Dept. of Commerce
and Insurance
500 James Robertson Parkway
Nashville, TN 37243
Attn: Commissioner, Insurance

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

EG 789287108 US

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540